WATERMAN, Justice.
In this appeal, we must decide whether a business insurance policy covers water damage inside a building resulting when a corroded interior drainpipe bursts during a summer rainstorm. The pipe carried rainwater from the roof to a storm sewer. The policy only insures damage “caused by rain” if an insured event first ruptures the roof or exterior walls to allow the rain to enter or if the damage results from melting ice or snow. The district court granted summary judgment for the insurer, concluding the water damage was caused by rain. The court of appeals reversed, concluding that damage from “rainwater” flowing from the broken interior drainpipe is not damage “caused by rain.” We granted the insurer’s application for further review.
This case presents our first opportunity to adjudicate coverage claims under a rain limitation in an insurance policy. For the reasons explained below, we conclude the unambiguous language of the rain limitation precludes coverage for the damage caused by the rainwater escaping the ruptured interior drainpipe. We, like the district court, also reject the insured’s alternative argument that coverage is available because the damage resulted from the “breaking or cracking of any part of a system containing water or steam.” That argument fails because the policy does not provide coverage for damage “caused by rain,” even if a system containing water was involved. We therefore vacate the decision of the court of appeals and affirm the district court’s summary judgment in favor of the insurer.
I. Background Facts and Proceedings.
Amish Connection, Inc. leased space in Crossroads Shopping Mall in Waterloo, where it operated the Amish Connection Store. In 2008, Amish Connection moved into Suite 102. This litigation arises from the failure of a leaky four-inch cast-iron drainpipe that ran above the ceiling tiles *233 and along the interior back wall. This pipe connected to the rooftop drains and carried rainwater down and through the interior of the budding to a storm sewer. During heavy rains, leaking rainwater routinely ran down the back wall of the suite. To address the leakage, mall management installed a makeshift wooden trough to catch the rainwater from the back wall and direct it toward a drain. The drainage tile and pipe system in Suite 102 showed “trails of rust left by years of water leak issues.” The drainpipe was hidden from the tenant’s view by ceiling tiles and wallboard, and Amish Connection was unaware that it 'leaked. The drainpipe itself was “extremely rusty” before it failed. Subsequent photos show extensive corrosion on the pipe, especially where it joined the wall.
In May 2010, the owner of Amish Connection approached the mall manager about closing the store until November “because business was bad.” New lease contracts were prepared to allow Amish Connection to close its business to the public through October and reopen November 1. During that period, Amish Connection would continue paying rent for Suite 102 and store property there. On June 14, the new lease agreements were executed. It rained heavily that night. The rainstorm caused no damage to the roof, windows, or exterior walls of the building. The next morning, however, the mall maintenance staff discovered the interior drainpipe had failed, flooding the back room of Suite 102 with up to several inches of rainwater and soaking the carpet in much of the front showroom. The rainwater caused substantial damage to Amish Connection’s office, bathroom, and property stored there, including its samples, inventory, office supplies, and business records.
Amish Connection promptly submitted a claim under its business insurance policy with State Farm Fire and Casualty Company (State Farm). Section I of the policy, entitled “LOSSES INSURED AND LOSSES NOT INSURED,” provides:
We insure for accidental direct physical loss to property covered under this policy unless the loss is:
1. limited in the PROPERTY SUBJECT TO LIMITATIONS section; or
2. excluded in the LOSSES NOT INSURED section that follows.
The relevant provisions of those two sections state:
PROPERTY SUBJECT TO LIMITATIONS
We will not pay for loss:
[[Image here]]
6. to the interior of any building or structure, or the property inside any building or structure, caused by rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:
a. the building or structure first sustains damage by an insured loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
b. the loss is caused by thawing of snow, sleet or ice on the building or structure....
[[Image here]]
LOSSES NOT INSURED
[[Image here]]
2. We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following:
[[Image here]]
d. smog, wear, tear, rust, corrosion, fungus, mold, decay, deteriora *234 tion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.
But if accidental direct physical loss by any of the “Specified Causes of Loss” or by building glass breakage results, we will pay for that resulting loss....
The definitions section of the policy defined “Specified Causes of Loss” to include:
14. water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.
On June 16, State Farm declined Amish Connection’s claim based on the rain limitation in paragraph 6 of the property subject to limitations section. On December 27, Amish Connection filed a civil action against its landlord and the mall operator alleging they had concealed the water infiltration problem the tenant discovered when ceiling tiles were removed after the drainpipe failed. Amish Connection alleged those defendants “took insufficient efforts to remedy the water infiltration problem and Defendants’ actions caused further water damage to the lower level unit # 102.” The lawsuit further alleged the mall owner and operator “were guilty of gross negligence and willful misconduct by renting [Suite 102] while knowing of, not disclosing, and not taking remedial action to resolve the significant long-standing water problems.”
On November 28, 2011, counsel for Amish Connection wrote to State Farm asking it to reconsider its denial of the claim and provide coverage for the water damage. State. Farm responded on' December 22 that it would investigate further and cited paragraph 2(d) excluding coverage for “rust, corrosion, ... and deterioration,” in addition to the rain limitation in paragraph 6. On January 8, 2012, State Farm sent another letter confirming its denial of coverage based on both provisions. On January 20, Amish Connection moved to amend its petition to add State Farm as a defendant to a claim of breach of its insurance contract. Amish Connection later dismissed its claims against the mall owner and operator. The lawsuit proceeded against State Farm alone.
On July 27, State Farm filed a motion for summary judgment based on paragraph 6 excluding coverage for “damage caused by rain.” Amish Connection resisted, arguing that the water damaging the interior of Suite 102 was no longer “rain,” and the actual cause of the loss was the failure of the drainage pipe, falling within coverage under paragraph 14. On October 18, the district court granted State Farm’s motion based on paragraph 6, stating “as a matter of law the water running through the pipe which caused the loss was rainwater.” Amish Connection moved for a more specific ruling to address its alternative argument under the exception to the rust- and-corrosion exclusion for water damage resulting from the “breaking or cracking of any part of a system or appliance containing water or steam.” State Farm resisted, arguing that the ruling on the rain limitation was dispositive under the language of the insuring agreement that provides coverage for accidents “unless the loss is: 1. limited [by the rain limitation]; or 2. Excluded in the Losses Not Insured section.” On December 20, the district court agreed with State Farm’s interpretation and denied Amish Connection’s motion, stating:
The policy reads that “We insure for accidental physical loss to property covered under this policy unless the loss is: 1) Limited in the PROPERTY SUBJECT TO LIMITATIONS section; or 2) *235 Excluded in the LOSSES NOT INSURED section that follows.” (Emphasis Added). Therefore, if a loss is excluded under either the PROPERTY SUBJECT TO LIMITATIONS section or the LOSSES NOT INSURED section, then it is excluded, and analysis under the other section is not necessary. Therefore, the Court declines to rule on whether the LOSSES NOT INSURED provision applies, as the loss is already excluded by the other section.
Amish Connection appealed, and we transferred the case to the court of appeals. The court of appeals reversed the summary judgment, concluding the “district court erred by finding the rain limitation [in paragraph 6] was applicable to this case.” The court of appeals, citing dictionaries and cases from other jurisdictions, distinguished “rain” from “rainwater”:
The definitions of “rain” and “rainwater,” although similar, encompass two different points in time. As water is falling, it is considered “rain.” After it has fallen — and, as here, been collected on a rooftop and channeled into pipes for transport to a storm sewer — it is considered “rainwater.”... While the water emitting from the burst pipe may fall within the definition of “rainwater,” it does not fall within the definition of “rain”. Because loss caused by “rainwater” is not excluded or otherwise limited under the policy, the district court erred in interpolating the term “rainwater” into the policy and concluding the interpolated term was unambiguous.
The court of appeals further concluded to the extent the limitation of coverage for damage “caused by rain” in paragraph 6 is ambiguous, it must be construed against State Farm. The court of appeals determined the parties’ arguments under other terms of the policy “are best addressed by the district court in the first instance” on remand. We granted State Farm’s application for further review.
II. Standard of Review.
We review a district court’s summary judgment ruling that interprets an insurance policy for correction of errors at law. Boelman v. Grinnell Mut. Reins. Co., 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. at 501 (citing Iowa R. Civ. P. 1.981(3)). We may affirm summary judgment on a conflict “concerning only the' legal consequences of undisputed facts.” Id. We examine the record in the light most favorable to the nonmov-ing party. Id.
III. Analysis.
This case presents our court’s first opportunity to adjudicate an insurance claim under a policy limiting coverage for losses “caused by rain.” The facts are undisputed as to the source of the water damage— a corroded interior drainpipe burst during a rainstorm, flooding the rooms inside with rainwater. The fighting issue is whether the damage was “caused by rain” within the meaning of paragraph 6 of the limitations of coverage. Neither side has offered any extrinsic evidence on the meaning of the insurance contract. Accordingly, its interpretation is for the court to decide. See id. (“Policy interpretation is always an issue for the court, unless we are required to rely upon extrinsic evidence or choose between reasonable inferences from extrinsic evidence.”). We conclude State Farm was entitled to summary judgment in its favor based on the limitation of coverage. Our holding is consistent with the decisions of other courts construing equivalent policy language.
*236 Our rules governing the construction and interpretation of insurance policies are well-settled. “The cardinal principle ... is that the intent of the parties at the time the policy was sold must control.” LeMars Mut. Ins. Co. v. Joffer, 574 N.W.2d 303, 307 (Iowa 1998). Except in cases of ambiguity, we determine “the intent of the parties by looking at what the policy itself says.” Boelman, 826 N.W.2d at 501. If a term is not defined in the policy, we give the words their ordinary meaning. Id. “We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase.” Id.
“[A] policy is ambiguous if the language is susceptible to two reasonable interpretations” when the contract is read as a whole. Id. “If the policy is ambiguous, we adopt the construction most favorable to the insured.” Id. at 502. “An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms.” Id. Moreover, “ ‘[a]mbiguity is not present merely because the provision “could have been worded more clearly or precisely than it in fact was.” ’ ” Am. Family Mut. Ins. Co. v. Corrigan, 697 N.W.2d 108, 114 (Iowa 2005) (quoting Cairns v. Grinnell Mut. Reins. Co., 398 N.W.2d 821, 824 (Iowa 1987)). “If an insurance policy and its exclusions are clear, the court 'will not “write a new contract of insurance” ’ for the parties.” Boelman, 826 N.W.2d at 502 (quoting Thomas v. Progressive Cas. Ins. Co., 749 N.W.2d 678, 682 (Iowa 2008)). We construe exclusions strictly against the insurer. Id. Nevertheless, “we must enforce unambiguous exclusions as written.” Bituminous Cas. Corp. v. Sand Livestock Sys., Inc., 728 N.W.2d 216, 222 (Iowa 2007).
A. The Rain Limitation. Applying these principles here, we conclude the rain limitation in paragraph 6 unambiguously defeats coverage for the rainwater damage to Suite 102. This provision states that subject to two exceptions the insurer “will not pay for loss ... to the interior of any building ... or the property inside ... caused by rain.” Neither exception applies. The first allows coverage if “the building ... first sustains damage by an insured loss to its roof or walls through which the rain ... enters.” This exception would allow coverage, for example, if a tornado dropped a tree on the roof, opening a hole through which rain entered. Amish Connection alleges no damage to the building’s roof or walls through which rain entered Suite 102. Rather, the rainwater damage occurred when the interior drainpipe failed. The second exception to the rain limitation provision allows coverage if “the loss is caused by thawing of snow, sleet or ice on the building or structure.” The June rainstorm involved no thawing of precipitates.
Amish Connection acknowledges these exceptions do not apply, but argues the water damage in suite 102 was not “caused by rain” within the meaning of paragraph 6. It contends the water escaping the ruptured drainpipe was no longer “rain” but rather “rainwater.” The court of appeals agreed, stating, “We think it fair to say that a reasonable person standing in the interior of a shopping mall underneath a burst drainpipe would not conclude that he or she was standing in the ‘rain.’ ” True enough. But, “rainwater” unquestionably is “caused by rain,” and it is undisputed the water damage occurred during a rainstorm when the drainpipe ruptured to spill rainwater into Suite 102. We hold as a matter of law that water damage is “caused by rain” within the meaning of paragraph 6 of the limitations of coverage when an interior drainpipe fails during a *237 rainstorm and releases rainwater inside the building.
Under common parlance, damage caused by “rainwater” is “caused by rain.” If water is only considered rain while it is falling and becomes rainwater after it strikes a surface then the policy’s limitation on coverage for damage “caused by rain” would be eviscerated. Water does not damage property while merely falling through the air, but only after it strikes a surface. Under the court of appeals’ interpretation, the rain limitation in the policy would be superfluous, and the coverage for rainwater damage would extend to leaky roofs and skylights. See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents, 471 N.W.2d 859, 863 (Iowa 1991) (“[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.”).
State Farm argues its commercial property insurance policy is not intended to provide coverage for damage resulting from deferred maintenance. Other courts have agreed. In Petrick v. State Farm Fire & Casualty Co., the New Jersey appellate court affirmed summary judgment for the insurer based on a rain limitation and noted insurance is not intended to pay costs resulting from poor maintenance:
If that coverage were found to exist, State Farm would become the insurer of all water damage to personalty caused by inadequate or delayed maintenance of a premises. That is clearly a risk that the insurer did not agree and could not reasonably be found to assume. We will not write for plaintiffs a better policy of insurance than the one purchased.
No. A-1152-09T3, 2010 WL 3257894, *5 (N.J.Super.Ct.App.Div. Aug. 13, 2010) (per curiam); see also Dashtpeyma v. Liberty Mut. Grp., 569 Fed.Appx. 886, 887 (11th Cir.2014) (per curiam) (affirming summary judgment for insurer based on rain limitation “when rain water leaked through rotted wood on window sills and pieces of siding”). It is undisputed that the drainpipe that failed in Suite 102 was rusty, corroded, and leaky for a long period preceding the rainstorm during which it ruptured. This is not an insured loss under the rain limitation in State Farm’s policy.
Other courts have reached the same result we do under equivalent policy language. In Horizon III Real Estate v. Hartford Fire Insurance Co., the insured’s office basement flooded during a torrential rainstorm that overwhelmed the building’s interior drainpipes or the connecting storm sewer system. 186 F.Supp.2d 1000, 1002 (D.Minn.2002). The insurance policy contained a rain limitation like State Farm’s that provided no coverage for damage to the “interior of any building ... caused by or resulting from rain.” Id. at 1005. The insured, like Amish Connection, argued the rain “stopped being ‘rain’ when it touched the roof,” as it was no longer falling from the sky. Id. at 1006. The federal district court rejected that argument, concluding the water damage “was caused by or resulted from, a torrential rain storm” within the meaning of the “unambiguous” rain limitation. Id. at 1006-07. Accordingly, the court entered summary judgment for the insurer. Id. at 1002,1009.
The Nebraska Court of Appeals, applying the same rain limitation in a business policy, likewise rejected the argument that rain is no longer rain once it lands on a rooftop:
[The insured] first argues that the damage he suffered was not caused by rain, on the theory that the water which entered his building had lost its nature as “rain” once it entered the building. We are unswayed by this tortured reading of a clearly worded exclusion. [The in *238 sured] does not deny that rain fell and that the water resulting from that rain, however characterized, entered the building. The policy excludes damage “caused by or resulting from rain,” which is precisely what happened in this case.
Einspahr v. United Fire & Cas. Co., No. A-99-371, 2000 WL 758654, at *4, *6 (Neb.Ct.App. June 13, 2000) (affirming summary judgment for insurer); accord Stufflebean v. Fireman’s Fund Ins. Co., 710 S.W.2d 931, 933 (Mo.Ct.App.1986) (holding rain limitation excluded coverage for water damage resulting from broken gutter); Kennel Delites, Inc. v. T.L.S. NYC Real Estate, LLC, 49 A.D.3d 302, 852 N.Y.S.2d 130, 130-31 (2008) (applying exclusion for damage “caused by rain” when rainwater leaked into building after debris clogged roof drain); U.S. Fire Ins. Co. v. Matchoolian, 583 S.W.2d 692, 694 (Tex.Ct.App. 1979) (same). But see Fidelity Coop. Bank v. Nova Cas. Co., 726 F.3d 31, 40-41 (1st Cir.2013) (holding water damage resulting from clogged roof drain was covered under amendatory flood endorsement notwithstanding rain limitation in original policy); id. at 42 (Kayatta, J., concurring in part and dissenting in part) (“[Jover-age would not exist here but for the amen-datory endorsement for flood coverage.”).
The court of appeals relied on State Farm Fire & Casualty Co. v. Paulson for its conclusion that rain is “water falling from the sky.” 756 P.2d 764, 767 (Wyo.1988) (“ ‘Rain’ is ordinarily and commonly thought of as water falling from the sky. After it stops falling, one does not say that it is ‘raining*_”). That case is inappo-site. In Paulson, the insured’s basement windows were broken by hail, allowing water from a rainstorm to flow in through the broken windows. Id. at 764. The policy contained a separate exclusion for damage from “flood [or] surface water.” Id. at 765. Under the plain language of this exclusion, water from the rainstorm that landed on nearby higher ground was “surface water” when it flowed into the basement windows. Id. at 771-72. The Paulson court distinguished rain from rainwater to hold the surface water exclusion precluded coverage, not to avoid the rain limitation. See id.
The court of appeals also relied on Unobskey v. Continental Insurance Co., which is also inapposite. 147 Me. 249, 86 A.2d 160 (1952). In Unobskey, the outside door to a retail shop was “torn open” during “a very severe storm with high wind and heavy rain.” Id. at 160-61. “[A] ‘river’ of water went, through the doorway” and' damaged inventory stored in the basement. Id. at 161. The policy covered damage from wind but excluded coverage for damage from “ ‘high water or overflow whether driven by wind or not.’ ” Id. at 163. The court affirmed judgment for the insurer because the policy “did not cover the damage caused by running surface water from rainstorm and melting snow[] that overflowed the catch basins and the parking area.” Id. at 164. Such cases adjudicating surface water exclusions are inapplicable regardless of whether the water causing damage accumulated in a rainstorm.[1] The rainwater causing damage to *239 Suite 102 had not reached the outside ground to become surface water. Flooding from surface water presents a different risk than rainwater landing on a building.
B. The “Water System” Exception to the Rust-and-Corrosion Exclusion. Because the rain limitation is dispositive, we, like the district court, reject Amish Connection’s alternative argument for coverage based on paragraph 14 of the definitions. That provision defines “Specified Causes of Loss”[2] to include: “water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.” Amish Connection contends the drainpipe that burst is a “system or appliance containing water.” If so, the water damage to Suite 102 would fall within an exception to the separate exclusion for “rust, corrosion, [and] deterioration.” [3] But, standing alone, paragraph 14 would not create coverage for rain damage because an .exception to an exclusion does not create coverage that otherwise is lacking. As the Indiana Court of Appeals observed:
In general, “an exception to an exclusion cannot create coverage where none exists. Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause.” “In *240 simplistic terms, the process is such: if the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered. If an exclusion excludes coverage, an exception to the exclusion may re-grant coverage.”
Hartford Cas. Ins. Co. v. Evansville Vanderburgh, Pub. Library, 860 N.E.2d 636, 646 (Ind.Ct.App.2007) (quoting Amerisure Inc. v. Wurster Constr. Co., 818 N.E.2d 998, 1005 (Ind.Ct.App.2004) (citation omitted)).
Unlike the exclusion for rust or corrosion, the rain limitation contains no exception for “Specified Causes of Loss.” Yet, other provisions in the “PROPERTY SUBJECT TO LIMITATIONS” section of the policy do include exceptions for “Specified Causes of Loss.” For example, on the same page, the policy provides:
We will not pay for loss: ...
2. to fragile articles, such as glassware, statuary ... and other articles of a brittle nature, if broken, unless caused by any of the ‘Specified Causes of Loss’ or by building glass breakage.
If the State Farm policy were intended to cover water 'damage from a breaking gutter or drainpipe releasing rainwater, then the rain limitation in paragraph 6 likewise would have included an exception for specified causes of loss such as a breaking pipe in a water system. See Oyens Feed & Supply, Inc. v. Primebank, 808 N.W.2d 186, 194 (Iowa 2011) (concluding that selective placement of phrase in one subsection but not another meant the phrase did not apply where it was omitted). Coverage for rainwater damage is lacking absent such an applicable exception within the rain limitation.
We assume for the sake of argument the interior drainpipe that failed while carrying rainwater from the roof to the storm sewer may be considered “part of a system ... containing water” within the meaning of paragraph 14. Cf. Cameron v. USAA Prop. & Cas. Ins. Co., 733 A.2d 965, 971 (D.C.Ct.App.1999) (applying surface-water exclusion to reject coverage claim based on similar “water system” provision when gutter failure during rainstorm contributed to water damage caused by rainwater flowing from patio). We also assume the water damage in this case would not have occurred but for both the rainstorm and the failure of the interior drainpipe. That is, the breaking of the drainpipe was a concurrent cause of the water damage to the office and its contents.
Nevertheless, paragraph 14 does not provide coverage because State Farm’s policy effectively has an anticoncurrent-cause provision. This means the rain limitation controls regardless of whether the breaking drainpipe is considered a concurrent cause of the rainwater damage. The operative anticoncurrent-cause language turns on the word “or” in the lead paragraph of Section I of the policy, entitled “LOSSES INSURED AND LOSSES NOT INSURED”:
We insure for accidental direct physical loss to property covered under this policy unless the loss is:
1. limited in the PROPERTY SUBJECT TO LIMITATIONS section; or
2. excluded in the LOSSES NOT INSURED section that follows.
(Emphasis added.) The district court quoted and relied on this provision in denying Amish Connection’s motion for a more specific ruling on summary judgment. The “or” in this provision is disjunctive. See Denison Mun. Utils. v. Iowa Workers’ Comp. Comm’r, 857 N.W.2d 230, 236 (Iowa 2014) (ascribing a disjunctive meaning to the word “or” be *241 tween statutory provisions); Monroe County v. Int’l Ins. Co., 609 N.W.2d 522, 525 (Iowa 2000) (holding disjunctive “or” between alternative provisions of exclusion defeated coverage even though only one alternative applied). As the district court correctly concluded, this means there is no coverage under the State Farm policy for property damage resulting under circumstances triggering either a limitation of loss in the first numbered paragraph or an exclusion in the second. That is, if the rain limitation applies, it does not matter whether this property loss otherwise falls within the “water system break” exception to the rust exclusion.
This makes sense. Water damage resulting from a breaking sprinkler or hot water pipe or radiator could be covered despite the rust-and-corrosion exclusion, but not water damage resulting from a breaking gutter or roof drainpipe for rainwater subject to the rain limitation. Why the difference? Because the insurer expects the property owner to keep the rain out and writes the policy to avoid paying for damage from rain resulting from deferred maintenance. See Petrick, 2010 WL 3257894, at *5 (applying rain limitation as intended to avoid insuring for damage resulting from deferred maintenance). Under Amish Connection’s interpretation, rain damage resulting from breaking gutters or drainpipes would be covered, and the “or” in Section I would be replaced with the conjunctive “and” such that a loss is covered unless it is both within the rain limitation and (not “or”) excluded separately. We will not rewrite clear policy language. See Boelman, 826 N.W.2d at 502. Rather, “we must enforce unambiguous exclusions as written.” Bituminous Cas. Corp., 728 N.W.2d at 222.
The anticoncurrent-cause language in State Farm’s policy is enforceable. See, e.g., TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co., 114 F.3d 731, 733 (8th Cir.1997) (enforcing anticoncurrent-cause provision under Missouri law, noting “the most analogous and persuasive cases from other states recognize that parties may contract out of application of the efficient proximate cause doctrine”); see generally Dale Joseph Gilsinger, Validity, Construction, and Application of Anticoncurrent Causation (ACC) Clauses in Insurance Policies, 37 A.L.R.6th 657 (2008 & Supp.2014). Some insurance policies include more expansive anticoncurrent-cause provisions than State Farm’s policy. See id. at 669-70 (quoting standard long-form and short-form provisions). The fact an insurer could have made an exclusion more explicit does not make the existing language ambiguous. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 209-10 (5th Cir.2007) (enforcing flood exclusions for water damage allegedly resulting from the negligent design, construction, or maintenance of flood-protection levies); Corrigan, 697 N.W.2d at 114. Indeed, in Corrigan, we specifically held the omission of an anticoncurrent-cause provision in the liability section of the homeowners’ policy did not create ambiguity even though such a provision was included in the property insurance section of the same policy. 697 N.W.2d at 114-15. Thus, as the district court correctly concluded, because the rain limitation applies, there is no coverage regardless of whether the breaking drainpipe falls within the exception to the separate rust-and-corrosion exclusion.
When insurance policies lack such an anticoncurrent-cause provision, we have .held an accident that has two independent causes, one of which is covered and one excluded, is covered unless the excluded cause is the sole proximate cause of injury. See, e.g., Grinnell Mut. Reins. Co. v. Emp’rs Mut. Cas. Co., 494 N.W.2d 690, 693-94 (Iowa 1993) (holding general liability insurer covered personal injury claim *242 arising from student’s fall from bus because school district’s negligent supervision of loading fell outside scope of motor vehicle exclusion); Kalell v. Mut. Fire & Auto. Ins. Co., 471 N.W.2d 865, 868 (Iowa 1991) (“We hold that, when two. independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowners policy unless the vehicle-related negligence is the sole proximate cause of the injury. Under Iowa law, of course, more than one proximate cause may exist.”). In Kalell, the homeowners policy excluded coverage for bodily injury arising out of use of a motor vehicle owned by the insured. Id. at 866. The victim was injured when struck by a tree limb the insured was pulling off a tree with a rope attached to his pickup truck. Id. We noted coverage clearly would be outside the scope of the exclusion if people had pulled on the ropes manually without using the vehicle. Id. at 868. We concluded pulling the limb with a rope and use of the truck were independent acts and held the trier of fact must determine whether use of the motor vehicle was the sole proximate cause of the injury. Id. at 869. These cases do not help Amish Connection because neither case involved an anticoncurrent-cause provision and paragraph 14 is not an independent coverage grant, but rather merely removes breaking pipes from the rust-and-corrosion exclusion.
More recently, in Corrigan, parents of a child injured in day care sued the day-care providers, who sought liability coverage under their homeowners policy. 697 N.W.2d at 109-110. The policy excluded coverage for “bodily injury ... arising out of ... violation of any criminal law for which any insured is convicted.” Id. at 110. One insured was convicted of child endangerment. Id. at 109-10. Another was sued for negligent supervision. Id. at 110. We held the insurer was entitled to summary judgment based on the criminal act exclusion and distinguished Kalell, noting that the covered and excluded acts were not “independent” because to prove negligent supervision, one had to prove the underlying tort by the person who was not properly supervised. Id. at 112-13. That is, there would have been no injury without the excluded criminal act. See id. Similarly, there would have been no water damage here but for the rainfall, and damage caused by this rain is not covered. This case is more like Corrigan than Ka-lell. In any event, we resolve the coverage claims based on the unambiguous contract language, not tort causation principles.
Amish Connection relies heavily on a New York trial court decision, Wider v. Heritage Maintenance, Inc., 14 Misc.3d 963, 827 N.Y.S.2d 837 (Sup.Ct.2007). In that case, a third-party contractor working on the fagade of the insured’s building negligently placed tarps on scaffolding next to the building that collected rainwater. Id. at 842. The tarps were not placed on the scaffolding to keep rain out of the building, and “in the tarps’ absence, the rain would have merely fallen on the ground.” Id. at 845. The tarps were attached to ornaments on the fagade that broke off from the weight of the pooled water, which then seeped in to damage the interior of the building. Id. at 842. The insurer failed to show that the tarps collapsed during a rainfall. Id. at 844. The trial court acknowledged “it is clear that the Policy was not intended to cover damage to the interior of the Building stemming from rain.” Id. at 845. The trial court distinguished water damage from rain that directly enters a building during a rainstorm from damage resulting from pooled “surface water” that had collected in the tarps. Id. at 844. The trial court denied the insurer’s motion for summary judgment on the rain limitation, stating:
*243 The ordinary business person purchasing the Policy at issue here would not have expected the Rain Limitation to apply to an incident in which a temporary, man-made structure collected rainwater, diverting it from the ground and into the policyholder’s Building. Therefore, the Rain Limitation cannot be used to disclaim covered for damage and losses stemming from the September Incident.
Id. at 845. Wider is distinguishable from this case in which the drainpipe, installed to carry rainwater falling on the roof to the storm sewer, failed and spilled rainwater as it flowed down during the rainstorm. Nor are we persuaded by Tento International, Inc. v. State Farm Fire & Casualty Co., which held a contractor’s negligent failure to temporarily cover a hole it opened in the insured’s roof, rather than rain, was the efficient proximate cause of water damage to electrical equipment within the building. 222 F.3d 660, 662-68 (9th Cir.2000) (applying California law). The appellate court construed a separate provision of the policy to allow coverage for property damage caused by the negligence of a third-party contractor. Id. at 663. By contrast, the rain limitation in State Farm’s policy contains no applicable exception for the negligence of a third party. In any event, Wider and Tentó International are trumped by our decision in Corrigan, which we decline to overrule.
We hold that under the unambiguous terms of State Farm’s policy, damage from rainwater released by a breaking drainpipe during a rainstorm is not an insured loss because the damage is caused by rain within the meaning of the rain limitation, even though the breaking drainpipe is a concurrent cause.
IV. Disposition.
For those reasons, the district court correctly granted State Farm’s motion for summary judgment based on the rain limitation. We therefore vacate the decision of the court of appeals and affirm the summary judgment entered by the district court. ■
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.
All justices concur except HECHT, WIGGINS, and APPEL, JJ., who dissent.

. The cases that Amish Connection relies upon are likewise inapposite. Amish Connection cites two cases for the proposition that water may change its character by entering an artificial channel. Heller v. Fire Ins. Exch., 800 P.2d 1006, 1009 (Colo. 1990) (concluding that runoff is no longer surface water when diverted into trenches); Georgetowne Square v. U.S. Fid. & Guar. Co., 3 Neb.App. 49, 523 N.W.2d 380, 386-87 (1994) (holding water ceases to be "surface water” when forced into an artificial trench). Both of these cases deal with surface water rather than rainwater, and both rely on precedent in their respective jurisdictions holding that "surface water” is not channeled artificially. *239 See Heller, 800 P.2d at 1008-09 & nn. 3-10 (surveying caselaw); Georgetowne Square, 523 N.W.2d at 385 ("The cases in Nebraska also emphasize that the definition of surface water involves the ‘natural’ drainage of such water.”). By contrast, other courts have held that surface water does not change status for coverage purposes when it flows into a man-made channel or underground. Cameron v. USAA Prop. & Cos. Ins. Co., 733 A.2d 965, 969-70 (D.C.Ct.App.1999) (concluding water flowing from a patio remained “surface water” even though it passed over an artificial channel intended to direct the water’s course); State ex rel. State Fire & Tornado Fund of N.D. Ins. Dep’t v. N.D. State Univ., 694 N.W.2d 225, 233 (2005) (stating "surface water does not lose its character as surface water simply by being artificially channeled underground”).

. The State Farm policy uses the term "Specified Causes of Loss” in some provisions and the term "insured loss” in others. We read the policy as a whole. Boelman, 826 N.W.2d at 501. The terms are not coextensive. See Chiodo v. Section 43.24 Panel, 846 N.W.2d 845, 853 (Iowa 2014) ("If the drafters intended the two concepts to be coextensive, different words would not have been used.”); Andover Vill. Ret. Cmty. v. Cole, No. 2013-A-0057, 2014 WL 5802674, at *3. (Ohio Ct.App.2014) (“Generally in interpreting a statute or a contract, we presume that the use of different words indicates an intention that the words possess different meanings.”).
Rather, it is clear from reading State Farm’s' policy as a whole that the terms "Specified Causes of Loss" and “insured loss” have different meanings, and a specified cause of loss is not a covered loss under some circumstances. For example, the defined specified causes of loss include the "weight of snow, ice or sleet” in paragraph 13, yet the policy specifically excludes losses to "gutters and downspouts caused by weight of snow, sleet or ice” in limitation 9. Thus, merely because a matter is included within the policy’s defined "Specified Causes of Loss” does not mean it cannot be subject to a separate limitation or exclusion.

. State Farm previously relied on that exclusion in addition to the rain limitation in denying the insurance claim. At oral argument, counsel for State Farm noted it was no longer relying on that exclusion found in the "LOSSES NOT INSURED” section of the policy, which provides:
2. We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following:
[[Image here]]
d. smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself. But if accidental direct physical loss by any of the "Specified Causes of Loss" or by building glass breakage results, we will pay for that resulting loss ...