# In the Iowa Supreme Court

No. 23–0156

Submitted February 19, 2025—Filed March 21, 2025

**Heartland Co-op,**

Appellant,

vs.

**Nationwide Agribusiness Insurance Company,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeffrey D. Bert, Business Specialty Court Judge.

The plaintiff appeals a district court order granting the defendant's motion for summary judgment regarding the proper interpretation of an insurance policy providing earnings and extra expense coverage. **Decision of Court of Appeals and District Court Judgment Affirmed.**

McDonald, J., delivered the opinion of the court, in which all participating justices joined. Waterman and May, JJ., took no part in the consideration or decision of the case.

John F. Lorentzen (argued) of Nyemaster Goode, PC, Des Moines, for appellant.

Sean M. O'Brien (argued), and Benjamin J. Kenkel of Dickinson, Bradshaw, Fowler, & Hagen, P.C., Des Moines, for appellee.

**McDonald, Justice.**

This case involves the interpretation of a commercial insurance policy. The provisions at issue provide coverage to the insured for loss of earnings and extra expense "for any one loss" subject to a limit of $3 million. The insured claimed that it suffered multiple losses at multiple locations as a result of the 2020 derecho and sought coverage for each of these losses. The insured claimed the $3 million limit applied to each loss. The insurer paid $3 million for earnings and extra expense coverage, but it denied the claim for coverage in excess of $3 million. The insurer believed the policy limited the insured to $3 million in total earnings and extra expense coverage for loss caused by the derecho without regard to how many locations were impacted by the storm. The parties were unable to resolve the dispute, and the insured filed suit. The parties filed cross motions for summary judgment, and the district court granted the insurer's motion, concluding the policy unambiguously limited the earnings and extra expense coverage to $3 million total. The court of appeals affirmed that decision. We granted the insured's application for further review, and we affirm the decision of the court of appeals and judgment of the district court.

I.

Heartland Co-op (Heartland) is an agricultural cooperative with numerous locations across Iowa, Nebraska, New Mexico, and Texas. It purchased a property and casualty insurance policy from Nationwide Agribusiness Insurance Company (Nationwide). As relevant here, the insurance policy provided Heartland with earnings and extra expense coverage (also called "business income" or "business interruption coverage") for "any one loss." The term "any one loss" was not expressly defined by the policy. The policy limited the earnings and extra expense coverage to $3 million for loss at "all covered locations."

In August 2020, Heartland's operations were significantly affected by a derecho. Heartland submitted an insurance claim to Nationwide reporting damage at forty-eight locations. Nationwide paid Heartland approximately $131 million for its derecho-related losses. This included $3 million for earnings and extra expense loss. Nationwide denied Heartland's claim for earnings and extra expense loss exceeding $3 million.

Heartland objected to Nationwide's claim denial. Heartland communicated its belief that once the earnings and extra expense coverage was triggered, the policy provided Heartland with earnings and expense coverage for each damaged location subject to a $3 million limit for each location. Nationwide, through an insurance adjuster, explained that the "$3,000,000 limit for Earnings and Extra Expense coverage applie[d] as a blanket limit to all covered locations rather than on a per location basis." While the derecho may have caused damage to multiple Heartland locations, Nationwide considered the derecho a single storm and the loss a single occurrence. In Nationwide's view, Heartland suffered only one loss covered by the earnings and extra expense coverage, and the policy limited Heartland to $3 million in earnings and extra expense coverage for that loss.

Heartland continued to dispute Nationwide's claim denial. Heartland's president contended the derecho was in fact multiple storms. He claimed that "[t]here was more than one loss under the business income coverage, and the losses were at a number of covered locations." Heartland's counsel also claimed the derecho caused "multiple, separate, and distinct Earnings and Extra Expense losses from windstorm damage at a number of insured locations." In short, Heartland believed the loss at each location should be treated separately.

After the parties failed to resolve this dispute, Heartland sued Nationwide for breach of contract. In the petition, Heartland claimed the derecho caused it to suffer multiple earnings and extra expense losses. Heartland claimed that the

combined total of its earnings and extra expense losses exceeded $3 million but that no "one loss" individually exceeded $3 million. Heartland claimed Nationwide breached the insurance contract when it denied Heartland's claim in excess of $3 million in earnings and extra expense coverage for the derecho-related loss.

The parties filed cross motions for summary judgment to resolve the policy interpretation question. In Heartland's motion for partial summary judgment, it presented a broad interpretation of "any one loss." Heartland claimed that "the number of losses may be of an indefinite number" and that "the $3 million limit applies to 'each and every' loss 'without limit.'" Heartland contended, "Nationwide should pay for each and every loss Heartland can prove up to Nationwide's policy limits of $3 million 'for any one loss.'" In support of its argument, Heartland selected six damaged locations and explained that it "suffered separate and distinct [business income] losses at each location over different time periods and accounted for those losses separately." It concluded that the losses at each of the six locations were separate losses because Heartland's use and occupancy of the locations after the storm differed and because the "period of restoration" for each location was different.

Nationwide contended Heartland's interpretation of the policy was contrary to the plain language of the policy. Nationwide argued that Heartland's claim arose from a single storm—the derecho—a single covered peril within the meaning of the policy. Accordingly, the single storm did not create separate earnings and extra expense losses at each location. Nationwide also argued that Heartland's many locations were "all a part of its integrated business operation," and, under the terms of the policy, an earnings loss is determined by the aggregate loss to the insured rather than based on loss at each of the individual locations. Nationwide thus concluded the policy provided a total of $3 million in

earnings and extra expense coverage for all loss caused by the derecho. According to Nationwide, the $3 million limit "applie[d] per occurrence as a blanket limit rather than on a per location basis."

The district court granted Nationwide's motion and dismissed the case. The court found Heartland's interpretation of the insurance policy was unreasonable, and it rejected Heartland's argument broadly construing "any one loss" to mean "each and every loss" at each covered location. It determined the derecho was a single weather event, and Heartland was one integrated business entity with many locations. The district court thus concluded that " 'any one loss' [was] an unambiguous phrase that mean[t] an indiscriminate singular amount of financial detriment suffered at all covered locations as a result of a covered peril." The district court held Nationwide did not breach the insurance policy in denying Heartland's claim for earnings and extra expense coverage in excess of $3 million.

Heartland appealed. We transferred the case to the court of appeals. A divided panel of the court of appeals affirmed the district court. The majority concluded that "any one loss" was not ambiguous and meant "the aggregate loss experienced by Heartland as a whole across 'all covered locations.' " The court of appeals held the district court correctly concluded Heartland suffered only one loss subject to a single $3 million earnings and extra expense coverage limit. A dissenting judge reached a different conclusion. That judge would have held that "Heartland can claim up to $3 million for each of the business interruption losses arising from each of the physical losses at Heartland's locations." We granted Heartland's application for further review.

## II.

"We review a district court's summary judgment ruling that interprets an insurance policy for correction of errors at law." *City of West Liberty v. Emps.*

*Mut. Cas. Co.*, 922 N.W.2d 876, 879 (Iowa 2019) (quoting *Just v. Farmers Auto. Ins.*, 877 N.W.2d 467, 471 (Iowa 2016)). "A grant of summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Just*, 877 N.W.2d at 471). "When reviewing the district court decision, we examine the record in the light most favorable to the nonmoving party." *Boelman v. Grinnell Mut. Reins.*, 826 N.W.2d 494, 501 (Iowa 2013).

A.

The law governing the interpretation of insurance contracts is well established. "Interpretation requires us to give meaning to contractual words in the policy." *Id.* "The plain meaning . . . generally prevails." *Id.*; *see also Jesse's Embers, LLC v. W. Agric. Ins.*, 973 N.W.2d 507, 511 (Iowa 2022) (stating that courts cannot rewrite an insurance policy); *Just*, 877 N.W.2d at 471. Nonetheless, "an insurer assumes a duty to define in clear and explicit terms any limitations . . . to the scope of coverage a policy affords." *Metro. Prop. & Cas. Ins. v. Auto-Owners Mut. Ins.*, 924 N.W.2d 833, 840 (Iowa 2019) (quoting *Nat'l Sur. Corp. v. Westlake Invs., LLC*, 880 N.W.2d 724, 734 (Iowa 2016)). When the policy language is ambiguous, we resort to rules of construction. "[A] policy is ambiguous if the language is susceptible to two *reasonable* interpretations." *Boelman*, 826 N.W.2d at 501. If ambiguity exists, we construe the insurance policy "in a light favorable to the insured." *A.Y. McDonald Indus., Inc. v. Ins. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991) (en banc). "An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms." *Just*, 877 N.W.2d at 471 (quoting *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015)).

B.

As indicated above, our review of the district court's ruling begins with the text of the insurance agreement itself. The earnings and extra expense coverage is found in the income coverage part of the commercial output program. The insuring agreement provides:

> "We" provide the coverages described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted by direct physical loss of or damage to property at a "covered location" or in the open (or in vehicles) within 1,000 feet thereof as a result of a covered peril.

The insuring agreement sets forth several requirements that must be triggered before Nationwide is obligated to provide the earnings and extra loss coverage detailed within the policy. First, Heartland's business must be "wholly or partially interrupted." Second, the interruption must be caused by "direct physical loss of or damage to property." Third, the direct physical loss or damage to property must be at a "covered location," as defined in the policy, or within 1,000 feet of a "covered location." Fourth, the interruption and damage must be "a result of a covered peril." The covered peril here is the derecho.[1]

On the same page of the policy, the earnings and extra expense coverage language provides:

**EARNINGS**

> "We" cover "your" actual loss of net income (net profit or loss before income taxes) that would have been earned or incurred and

---

[1]The court of appeals concluded that Heartland waived any challenge to the district court's determination that the derecho constituted a single weather event. We agree and proceed as though the derecho was a single weather event. *See* Iowa R. App. P. 6.903(2)(*a*)(8)(3); *Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 421 (Iowa 2023) ("We generally will not do a party's work for them, particularly if that 'require[s] us to assume a partisan role and undertake the [party's] research and advocacy." (alterations in original) (quoting *Inghram v. Dairyland Mut. Ins.*, 215 N.W.2d 239, 240 (Iowa 1974) (en banc))); *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) ("[R]andom mention of this issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration.").

continuing operating expenses normally incurred by "your" "business", including but not limited to payroll expense.

The net sales value of goods that would have been produced is included in net income for manufacturing risks.

**EXTRA EXPENSE**

"We" cover only the extra expenses that are necessary during the "restoration period" that "you" would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered peril.

"We" cover any extra expense to avoid or reduce the interruption of "business" and continue operating at a "covered location", replacement location, or a temporary location. This includes expenses to relocate and costs to outfit and operate a replacement or temporary location.

"We" will also cover any extra expense to reduce the interruption of "business" if it is not possible for "you" to continue operating during the "restoration period".

The key terms in these provisions are "we," "you," and "net income." The commercial output program defines "we" as "the company providing this coverage," i.e., Nationwide. A policy endorsement defines the terms "you" and "your" as "the Named Insured shown in the Declarations." The named insured on the commercial output program declarations page is "Heartland Co-op." The policy refers to "net income" as the "net profit or loss before income taxes."

When these defined terms are inserted into the policy language, it becomes clear that the policy provides coverage for loss of income or for additional expense to Heartland at the entity level rather than business interruption insurance for each location. "[Nationwide] cover[s] [*Heartland Co-op*'s] actual loss of *net income* (net profit or loss before income taxes)" and "extra expenses that are necessary during the 'restoration period' that [*Heartland Co-op*] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered peril." (Emphases added.) This provision is devoid of

any reference to individual covered locations. Instead, it is concerned only with Heartland's net profit or loss before income taxes at the entity level. This policy language is consistent with general business income insurance principles. *See* 46 C.J.S. *Insurance* § 1548, at 449 (2018) ("The purpose of business interruption insurance is to indemnify the insured against losses arising from an inability to continue normal business operation and functions due to the damage sustained as a result of the hazard insured against."); William H. Danne, Jr., Annotation, *Business Interruption Insurance*, 37 A.L.R.5th 41, 80 (1996) [hereinafter Danne] ("[B]usiness interruption insurance has a limited purpose, that being to protect the earnings which the insured entity would have enjoyed had the event or occurrence insured against not intervened . . . .").

While the text of the coverage provisions suggests the answer to the interpretive question, it does not definitively resolve it. We must also look at the language in the coverage limitation. The policy provides that "[Nationwide] pay[s] no more than the Income Coverage 'limit' indicated on the 'schedule of coverages' for any one loss." The schedule of coverages provides the following limit options:

**LIMIT** (check one)

[  ] Income Coverage Limit - The most "we"
        pay for loss at any one "covered location" is:

[X] Refer to Scheduled Locations (check if applicable)

The unchecked box provides a coverage limit for loss "at any one 'covered location,' " i.e., a limit applied for loss at each and every covered location, which is the coverage Heartland argues for now. The checked box—the contracted-for limit in the policy agreement—refers the parties to the "Scheduled Locations." The location schedule was part of the policy, and it contained different coverage limits for different kinds of coverage at each of Heartland's many locations. None of the specific locations identified in the schedule included a limit for earnings

and extra expense coverage. However, location number 087 on the schedule was a catchall that provided limits for "all 'covered locations.'" For example, it included a $2 million limit for "business personal property consisting of 'computers.'" It also included a $3 million limit for earnings and extra expense coverage.

We conclude the relevant terms of the insurance agreement are plain and unambiguous. The policy provides coverage for loss of net income and extra expense to Heartland, the entity insured, as a result of the covered peril, here, the derecho. The limit of that coverage is $3 million as determined by the loss of net income and extra expense to Heartland for the total loss as a result of damage and business interruption at "*all* covered locations" and not the separate losses at *each* covered location. (Emphasis added.) We cannot interpret the insurance policy to provide coverage and limits available to the parties but explicitly not selected, as evidenced by the unchecked box above.

Our interpretation of the policy—that the earnings and extra expense coverage limit is $3 million total for loss at all covered locations—is supported by the amount of premium paid. "While coverage cannot, of course, be related in direct proportion to premiums paid, we think that fact bears upon the reasonableness of [the insured's] expectations." *Farm Bureau Mut. Ins. v. Sandbulte*, 302 N.W.2d 104, 113 (Iowa 1981) (en banc); *see also N. Star Mut. Ins. v. Holty*, 402 N.W.2d 452, 456 (Iowa 1987) (considering the amount of the premium relative to insurance coverage limits when interpreting an insurance policy). In particular, an interpretation of a policy may be unsupported where the amount of premium paid does "not correlate with the substantially elevated risk [the insurer] would have assumed." *Boelman*, 826 N.W.2d at 505; *see also Iowa Nat'l Mut. Ins. v. Fid. & Cas. Co. of N.Y.*, 128 N.W.2d 891, 894 (Iowa 1964)

("No reasonable person would expect one small premium as appears here was intended to cover all other cars owned by the insured . . . .").

The summary judgment record shows that the premium Heartland paid for the earnings and extra expense coverage was wholly uncorrelated with the risk Nationwide would have assumed if Heartland's interpretation of the policy were correct. Heartland was quoted a premium of $1,078,181 for $906,034,623 of coverage for building property and business personal property excluding stock. Heartland was quoted a premium of $297,568 for $870,090,274 of coverage for stock. Heartland paid a premium of $2,760 for the earnings and extra expense coverage. If Heartland's interpretation of the policy were correct, that $2,760 in premium purchased at minimum, $258 million in coverage (eighty-six locations with a $3 million limit per location). We say at minimum because Heartland also argues it could suffer multiple losses at multiple locations. Specifically, Heartland has previously argued that "the number of losses may be of an indefinite number" and that "the $3 million limit applies to 'each and every' loss 'without limit.'" If this were correct, Nationwide's total risk exposure was in excess of $258 million for $2,760 in premium. That is a commercially unreasonable interpretation of the policy wholly unsupported by the language of the policy agreement, and we will not adopt it. *See Boelman*, 826 N.W.2d at 501 ("We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase."); *Cairns v. Grinnell Mut. Reins.*, 398 N.W.2d 821, 824 (Iowa 1987) (stating that courts will not "write a new contract of insurance between the parties" (quoting *Stover v. State Farm Mut. Ins.*, 189 N.W.2d 588, 591 (Iowa 1971))).

Heartland offers several rejoinders to the straightforward and commercially reasonable interpretation of the insurance agreement, but they are all without merit. Heartland relies on its internal accounting procedures to show

that it accounts for profit and loss at each location and thus can have multiple losses, but Heartland's internal accounting practices do not prevail over the plain language of the policy. *See* 46 C.J.S. *Insurance* § 1548, at 449 ("The business interruption itself is not a loss, and an actual loss occurs only where the insured is unable to reduce or eliminate lost profit caused by the interruption."). Further, while Heartland's internal accounting procedures may be relevant to the *amount* of loss suffered by Heartland, they are not relevant in determining the number of losses. *Cf.* Danne, 37 A.L.R.5th at 71 ("*In determining actual loss* sustained under a business interruption policy . . . , the insured's books and records . . . and its accounting practices are to be considered . . . ." (emphasis added)). Heartland adamantly argues that the policy provides for a "per loss limit" and not a per location limit, but the distinction Heartland attempts to draw is illusory and largely irrelevant. We agree that the coverage limit is "per loss," but there was only one loss here—the loss covered by the single covered peril, and the policy provides that the limit for that loss applies to damage at "all covered locations" rather than "each location" or "per location."

This brings us to Heartland's final argument. Heartland contends the court of appeals' interpretation of the policy conflicts with *Steel Products Co. v. Millers National Insurance*, 209 N.W.2d 32 (Iowa 1973). We conclude *Steel Products* is distinguishable. In *Steel Products*, there was only one damaged location at issue. *Id.* at 33–34. The question before the court was to "decide how to determine the period of business interruption under policies providing business interruption insurance." *Id.* at 33. We concluded that "[i]nterruption of use and occupancy continues from the date of damage to the date of substantial restoration of the insured premises." *Id.* at 38. The question in that case is wholly different than the question presented here—whether the limitation of coverage for "any one loss" at "all covered locations" allows Heartland to recover for

derecho-related losses at each location. On that question, *Steel Products* supports our interpretation of the statute. There, we explained that business interruption insurance generally covers the loss of income to the business entity as a whole. *See id.* at 36 ("[T]he essential nature and purpose of business interruption insurance generally is *to protect the earnings which the insured would have enjoyed had there been no interruption of the business.*" (emphasis added) (quoting *Nw. States Portland Cement Co. v. Hartford Fire Ins.*, 360 F.2d 531, 534 (8th Cir. 1966))).

### III.

The insurance policy is unambiguous. *See Amish Connection*, 861 N.W.2d at 236 (stating that an insurance policy is not ambiguous "merely because the provision[s] 'could have been worded more clearly or precisely' " (quoting *Am. Fam. Mut. Ins. v. Corrigan*, 697 N.W.2d 108, 114 (Iowa 2005))). Heartland purchased earnings and extra expense coverage for whole or partial business interruption caused by direct physical loss or damage to property as a result of a covered peril. That coverage was limited to $3 million in lost net income and extra expense to Heartland as a result of loss or damage to "all covered locations" caused by that covered peril. The policy contained a checkbox to provide the coverage Heartland now seeks. That checkbox was left blank. We will not rewrite the parties' contract on appeal.

**Decision of Court of Appeals and District Court Judgment Affirmed.**

All justices concur except Waterman and May, JJ., who take no part.