**Donald L. BETTIS, Plaintiff–Appellant,**

v.

**WAYNE COUNTY MUTUAL INSUR-
ANCE ASSOCIATION,
Defendant–Appellee.**

No. 88–1423.

Court of Appeals of Iowa.

Aug. 23, 1989.

Lance A. Grotewold, of Heslinga, Heslinga, Dixon & Grotewold, Oskaloosa, for plaintiff-appellant.

Lawrence P. McLellan, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for defendant-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

The question we must answer is whether the trial court correctly determined damages incurred while towing a tractor, following a collision, were not covered under collision insurance plaintiff-appellant Donald Bettis had with defendant-appellee Wayne County Mutual Insurance Associa-

tion. We find the damage was covered. We reverse the trial court.

This is a declaratory judgment action tried in equity. Our review is de novo. Iowa R.App.P. 4; *see Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). We give weight to the district court's findings of fact but are not bound by them. Iowa R.App.P. 14(f)(7).

The front suspension of plaintiff's farm tractor was damaged when it struck a culvert while being operated by the plaintiff's son. One of plaintiff's neighbors was contacted to tow the tractor into town for repairs. Before the tractor was towed, another one of plaintiff's sons placed the gearshift lever in the position marked "Tow." The tractor was then towed into town at twenty to twenty-five miles per hour, the tractor's normal operating speed. During towing, the front end of the tractor was raised approximately one foot off the ground.

When one of the plaintiff's sons picked up the tractor after the suspension repairs were made, he noticed the transmission did not seem to be operating properly. He immediately took the tractor to the local implement dealer, where it was discovered the upper and lower pinion shafts had frozen to the gears in the transmission. The mechanic who worked on the tractor believed the damage had been caused by towing the tractor without the engine running, thus preventing the transmission from being properly lubricated.

The owner's manual for the tractor provided the engine must be kept running during towing to maintain power steering and power brakes, and an extra gallon of oil should be added to the transmission for every six inches the front end is raised. No oil was added to plaintiff's tractor before it was towed. Plaintiff did not have an owner's manual, as he had bought the tractor used. Testimony at trial indicated the manual did not clearly state that the engine should be kept running in order to keep the transmission lubricated.

Plaintiff's insurer, defendant Wayne County Mutual Insurance Association, paid for the suspension repairs, less deductible, under plaintiff's collision coverage. Defendant refused to pay the transmission repair bill of over $6,000 due to policy language limiting coverage to "direct loss resulting from overturn or collision." Defendant argued the transmission damage was not a direct result of the collision.

Plaintiff filed the present declaratory judgment action, seeking a determination whether the policy covered the transmission damage. The district court held that the policy did not cover the transmission damage because the transmission damage was not a "direct loss resulting from" the collision with the culvert. The district court concluded that "direct loss" refers to proximate cause and that the culvert collision here was not a proximate cause of the transmission damage because it was not a substantial factor in causing the transmission damage. In making this determination, the court relied upon the definition of proximate cause found in the *Negligence* chapter of the Iowa Uniform Jury Instructions.

Plaintiff has appealed the district court's ruling. He contends the district court misinterpreted the phrase "direct loss" by applying the tort concept of proximate cause to a question of contract interpretation. Plaintiff argues the transmission damage was directly caused by the culvert collision because it would not have happened in the absence of the collision.

Our goal in interpreting an insurance policy is to determine the intent of the parties at the time the policy was sold. Due to the difference in bargaining power between the parties, we interpret any ambiguities in favor of the insured. We interpret the policy from the standpoint of an ordinary person, rather than an expert, in order to further the reasonable expectations of the parties. *Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785–86 (Iowa 1988).

Our supreme court has stated that the term "direct loss by fire" in a fire insurance policy is generally synonymous with proximate cause. *Kintzel v. Wheatland Mut. Ins. Assoc.*, 203 N.W.2d 799, 808

(Iowa 1973). In an insurance policy, direct cause means immediate cause or proximate cause, as distinguished from remote cause. *See Tracy v. Palmetto Fire Ins. Co.*, 207 Iowa 1042, 1045, 222 N.W. 447, 448 (1929). " 'Direct' as used in an insurance policy relates to causal connection and is to be interpreted as the immediate or proximate cause as distinguished from the remote cause." *John Drennon & Sons Co. v. New Hampshire Ins. Co.*, 637 S.W.2d 339, 341 (Mo.Ct.App.1982).

 The doctrine of proximate cause is applied differently in insurance cases than in tort cases. *Beckley v. New York Life Ins. Co.*, 229 Iowa 1007, 1013, 295 N.W. 844, 847 (1941). In insurance law, an insured event is considered the proximate cause of a loss if the event sets in motion other causes which, through an unbroken sequence and connection, result in the loss. *Qualls v. Farm Bureau Mut. Ins. Co.*, 184 N.W.2d 710, 713 (Iowa 1971).

> When it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in point of time or place to the result is necessarily to be chosen, since the dominant cause may be concurrent or remote in point of time or place.

43 Am.Jur.2d *Insurance* § 463 (1982). Thus, we look not necessarily to the last act in the chain of events, but rather to the predominant cause which set in motion the chain of events causing the loss. 5 J. Appleman, *Insurance Law & Practice* § 3083, at 309 (1970).

In *Chase Investment Co. v. Mid-Western Casualty Co.*, 232 Iowa 73, 4 N.W.2d 863 (1942), the plaintiff's truck was damaged in a collision. Plaintiff's driver required hospitalization immediately after the accident. Left unprotected, the truck suffered freezing damage to its motor and was broken into. The court refused to find that the freezing and theft were intervening, independent causes of damage to the truck. It instead held that the collision itself was the proximate cause of the damage. *Id.* at 77, 4 N.W.2d at 865.

 The loss in this case, the transmission damage, was the result of a chain of events set in motion by the collision, an insured event. While the defendant urges us to look at the towing as the efficient physical cause of the loss, we find the collision in the ditch was the dominant cause of the transmission damage. Therefore, the transmission damage is covered by plaintiff's collision insurance.

The parties to the insurance contract here could have reasonably foreseen that a collision would result in the need for towing, and damage to the vehicle might result while it was being towed. Such a contingency should therefore be deemed an element of the risk insured against. *See Lipshultz v. General Ins. Co. of Am.*, 256 Minn. 7, 96 N.W.2d 880, 886 (1959).

The district court decision⁄ is reversed.

REVERSED.