# IN THE COURT OF APPEALS OF IOWA

No. 16-1972
Filed March 7, 2018

**CITY OF WEST LIBERTY,**
    Plaintiff-Appellant,

**vs.**

**EMPLOYERS MUTUAL CASUALTY COMPANY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, Paul L. Macek, Judge.

A city appeals a summary judgment ruling in favor of the city's insurer pursuant to an exclusion in an all-risks insurance policy. **AFFIRMED.**

Thomas A. Vickers and Scott A. Ruksakiafi of Vanek, Vickers & Masini, P.C., Chicago, Illinois, and Amber J. Hardin of Stanley, Lande & Hunter, Muscatine, for appellant.

Sean M. O'Brien and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Heard by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A city appeals the district court's grant of summary judgment in favor of the city's insurer. The district court concluded the city's property damages were not covered by an all-risks insurance policy due to the policy's "Electrical Currents" exclusion. We affirm.

## I.      Background Facts and Proceedings

The facts in this case are generally undisputed. In November 2014, a gray squirrel scampered into an electrical substation owned by the City of West Liberty, Iowa (the City). The property was insured by Employers Mutual Casualty Company (EMC). The squirrel was climbing on equipment when, as the district court found, "the squirrel found itself in a rather shocking situation when it came into contact simultaneously with a cable clamp energized at 7200 volts and the grounded steel frame which supported the cable attached to the clamp." An electrical arc was generated when the squirrel completed the circuit. The arcing lasted thirty to forty-five seconds,[1] causing substantial damage to the City's property and short-circuiting the squirrel's life. The City and EMC agree the squirrel created the conductive path that resulted in an electrical arc that caused substantial damage to equipment at the City's electrical substation.

The City submitted a claim to EMC for the damages. EMC denied the City's claim, citing the insurance policy's "Electrical Currents" exclusion. Ultimately, the City filed suit seeking a declaration that its damage was covered

---

[1] According to an investigative report, "protective equipment for the transformer failed to operate, leaving the arcing to proceed for a matter of 30 to 45 seconds."

under the policy. Dueling motions for summary judgment were filed. In its analysis, the district court stated:

> [Here,] [t]here are not two distinct events that caused damages. While the incident might be characterized as having two events: 1) the squirrel physically touching the equipment, in and of itself hardly an "event," and 2) the ensuing electrical arc, the first event of the squirrel physically touching the equipment, by itself, did not cause any damage. The only event that caused the damage sought by [the City] was the electrical arc. Importantly, [the City] does not claim, nor do the undisputed facts show, that the squirrel did any damage to [the City]'s property such as gnawing on a power line or digging for nuts in a dangerous area. [The City] has characterized the "squirrel's actions" as "not excluded under the policy." The Court cannot conclude that the "squirrel's actions" were a cause of the damages because the squirrel did not actually do anything to cause damages; it merely touched some things it should not have touched. The arc caused all of the damages. Had the squirrel done what it had done and the arc not occurred, there would be no damages. Because there are not two different damage-causing events, the Court need not engage in an efficient proximate cause analysis. If an efficient proximate cause analysis was appropriate, the Court would find that the arcing was the dominant cause.

In granting summary judgment in favor of EMC, the district court concluded:

> The squirrel's presence was merely a legal cause of the chain of events that ensued afterwards. The squirrel by itself did not cause any damage. Rather, the sole cause of damage to [the City]'s property was the electrical arc. The Policy excludes coverage for damage caused by an electrical arc. Therefore, the Policy does not require [EMC] to cover the damage caused on November 7, 2014.

The court also denied the City's motion for partial summary judgment.

The City now appeals the court's ruling.

## II.    Standard of Review

We review a summary judgment ruling interpreting an insurance policy for correction of errors at law. *See Just v. Farmers Auto. Ins. Ass'n*, 877 N.W.2d 467, 471 (Iowa 2016). A grant of summary judgment is only proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a

matter of law.  *See* Iowa R. Civ. P. 1.981(3); *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719 (Iowa 2016).  If the dispute concerns only the legal consequences of undisputed facts, summary judgment is appropriate.  *See Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015).  "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record."  *Id.* at 6–7.

### III.    Applicable Insurance Contract Principles

The standards for interpreting and construing insurance policies are well established.  When scrutinizing an insurance policy,

> we must observe the differences between interpretation and construction of an insurance policy.  Interpretation requires us to give meaning to contractual words in the policy.  Policy interpretation is always an issue for the court, unless we are required to rely upon extrinsic evidence or choose between reasonable inferences from extrinsic evidence.  If the policy does not define a term, we give the word its ordinary meaning.  The plain meaning of the insurance contract generally prevails.
>
> Construction is the process of giving legal effect to a contract.  This is always a matter of law for the court.  The cardinal rule of construing insurance policies is that except in cases of ambiguity, the intent of the parties must control, and the court determines the intent of the parties by looking at what the policy itself says.  We consider the parties' intent at the time the policy was sold, not in hindsight.  We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase.
>
> Under an objective test, a policy is ambiguous if the language is susceptible to two *reasonable* interpretations.  We read the policy as a whole when determining whether the contract has two equally plausible interpretations, not seriatim by clauses.  This stems from the concept that [w]ords in an insurance policy are to be applied to subjects that seem most properly related by context and applicability.  Accordingly, reading the contract as a whole requires us to consider all declarations, riders, or endorsements attached.
>
> . . . . We will not interpret an insurance policy to render any part superfluous, unless doing so is reasonable and necessary to preserve the structure and format of the provision.  Moreover, we

> interpret the policy language from a reasonable rather than a hypertechnical viewpoint.

> If the policy is ambiguous, we adopt the construction most favorable to the insured. This same rule applies when an exclusion is ambiguous, because [a]n insurer assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms. Thus, we strictly construe exclusions against the insurer. We do so because insurance policies constitute adhesion contracts.

> An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms. If an insurance policy and its exclusions are clear, the court will not write a new contract of insurance for the parties.

*Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501–02 (Iowa 2013) (alterations in original) (internal citations and quotation marks omitted).

When an insured who has experienced loss seeks coverage under an insurance policy, the burden of proof initially is on the insured to prove that both the property and the peril were covered by the terms of the policy. *See, e.g.*, *Henschel v. Hawkeye-Sec. Ins. Co.*, 178 N.W. 2d 409, 418–20 (1970); 17A Steven Plitt et al., *Couch on Insurance* § 254:11 (3d ed. Dec. 2017 update) [hereinafter *Couch on Insurance*]; 46 C.J.S. *Insurance* § 1525 (Feb. 2018 update). If the insured meets the initial burden, it is then that the burden shifts to the insurer to prove any claimed exclusion or exception to the coverage. *See W. Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 598–99 (Iowa 1993); *Long v. Glidden Mut. Ins. Ass'n*, 215 N.W.2d 271, 274 (Iowa 1974); 17A *Couch on Insurance* § 254:12; 46 C.J.S. *Insurance* § 1525 (Feb. 2018 update); 5 Jeffery E. Thomas & Susan Lyons, *New Appleman on Insurance Law Library Edition* § 41.02[1][b][i] (Sept. 2017 update) [hereinafter *Appleman*] ("Once the insured makes a *prima facie* showing that the all-risks coverage exists and there is damage to or loss of the covered property, the burden shifts to the insurer to

demonstrate that the damage or loss falls within one of the exclusions listed in the policy.").

## IV.    Discussion

We begin our analysis by looking at the insuring agreement itself to determine if the "policy affords coverage under a particular set of circumstances." *See Nat'l Sur. Corp. v. Westlake Invs., LLC*, 880 N.W.2d 724, 739 (Iowa 2016). The relevant provisions of the insurance policy at issue provide:

> **PROPERTY COVERED**
> . . . .
> "We" cover direct physical loss to covered property at a "covered location" caused by a covered peril.
> . . . .
>
> **PERILS COVERED**
> "We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.
>
> **PERILS EXCLUDED**
> . . . .
> 2.  "We" do not pay for loss or damage that is caused by or results from one or more of the following excluded causes or events:
> . . . .
> g.  **Electrical Currents** — "We" do not pay for loss caused by arcing or by electrical currents other than lightning.  But if arcing or electrical currents other than lightning result in fire, "we" cover the loss or damage caused by that fire.
>
> "We" do cover the direct loss by a covered peril which occurs at "covered locations" as a result of any power interruption or other utility services.
>
> This exclusion does not apply to "computers."

The insurance policy at issue is an all-risks policy.  "[A]n 'all-risks' policy covers any risk of direct physical loss or damage to the covered property unless specifically excluded by the policy."  *Appleman* § 41.02[1][a].  "Under an 'all risk' property insurance policy, losses to covered property caused by any and all

perils, or risks, are covered, unless the loss is caused by a peril that is expressly and unambiguously excluded by the policy." *Id.* § 44.02[2]. "The term 'peril' or 'risk' refers to 'fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss." *Id.* § 44.02[1].

> An "all-risk" policy creates coverage of a type not ordinarily present under other types of insurance, and recovery is allowed for fortuitous losses unless the loss is excluded by a specific policy provision; the effect of such a policy is to broaden coverage, and a fortuitous event is one which, to the knowledge of the parties, is dependent upon chance.

10A *Couch on Insurance* § 148:50.

> "[U]nder all-risk policies a loss or damage arising from a fortuitous event, that is, one that is unexpected and not probable, and caused by an external force, that is, not resulting from an internal characteristic of the property, is covered under such a policy unless specifically excluded . . . ."

Jane Massey Draper, Annotation, *Coverage Under All-Risk Insurance*, 30 A.L.R.5th 170, § 2(a) (1995); *accord* 10A *Couch on Insurance* §§ 148:58–:59.

There is no dispute that the City suffered a direct physical loss to covered property at a covered location during the policy period. Thus, the City met its initial burden of proof. The burden then shifted to EMC to prove any claimed exclusions. Electrical arcing caused physical damage to the City's property. EMC argues the insurance policy specifically and clearly states EMC will not pay for a loss caused by arcing.

The City contends, however, a fortuitous event—the squirrel coming into contact simultaneously with the energized cable and grounded frame— immediately set in motion the arcing event that caused the City's property

damage, such event was the efficient proximate cause[2] of the City's loss, and the loss is therefore covered, not excluded, under the policy. EMC argues the efficient-proximate-cause rule does not come into play, contending only one peril—arcing—caused damage to the City's property and therefore the loss is excluded from coverage. Even if the efficient proximate cause rule does apply, EMC argues the arcing, an excluded peril, must be deemed the dominant cause of the loss and therefore the loss is excluded from coverage.[3]

We begin our analysis with interpretation—giving meaning to the contractual words in the policy. *See Boelman*, 826 N.W.2d at 501–02. Because there is no dispute concerning the property covered, we advance to the perils covered: "'We' cover risks of direct physical loss unless the loss is *limited or caused by* a peril that is excluded." (Emphasis added.) Most of the argument in this case has focused on causation, but we note the above language excludes a loss that "is *limited or* caused by a peril that is excluded." (Emphasis added.) When a term is not defined in an insurance policy, we give the term its ordinary meaning. "Limited" has been defined as "restricted in extent, number, or duration." *Limited*, Webster's Third New International Dictionary 1312 (unabridged ed. 2002).

---

[2] Our supreme court has said,

> In insurance law it is generally understood that where the peril insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss.

*Qualls v. Farm Bureau Mut. Ins. Co.*, 184 N.W.2d 710, 713 (Iowa 1971).

[3] Surprisingly, although a squirrel coming into contact with and shorting out electrical equipment is not an uncommon occurrence, our research did not unearth any on-point cases.

We next observe that the introductory language to a grouping of exclusions, which includes the electrical currents exclusion, says: "'We' do not pay for loss or damage that is *caused by or results from* one or more of the following excluded causes or events." (Emphasis added.) The United States Supreme Court has explained the ordinary meaning of the phrase "results from" as follows: "A thing 'results' when it '[a]rise[s] as an effect, issue, or outcome *from* some action, process or design.' 'Results from' imposes, in other words, a requirement of actual causality." *Burrage v. United States*, ___ U.S. ___, ___, 134 S. Ct. 881, 887 (2014) (alterations in original) (internal citation omitted). "Where there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality." *Id.* at 888; *see also* 7 *Couch on Insurance* § 101:52.

> But-for causation is a hypothetical construct. In determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989).

Next, we consider construction, the process of giving legal effect to the contract to determine the intent of the parties by looking at what the policy itself says. *Boelman,* 826 N.W.2d at 501. The electrical currents exclusion provides:

> 2. "We" do not pay for loss or damage that is caused by or results from one or more of the following excluded causes or events:
> . . . .
> g. **Electrical Currents** — "We" do not pay for loss caused by arcing or by electrical currents other than lightning. But if arcing or electrical currents other than lightning result in fire, "we" cover the loss or damage caused by that fire.

"We" do cover the direct loss by a covered peril which occurs at "covered locations" as a result of any power interruption or other utility services.

This exclusion does not apply to "computers."

The language of this exclusion seeks to exclude loss or damage that is caused by or results from arcing other than lightning. But even if arcing was caused by or resulted from an event other than lightning, and a fire resulted, the policy would cover the fire. Also, direct loss as a result of any power interruption is excepted from the exclusion, and thus coverage is provided. Likewise, the exclusion does not apply to computers.

Consequently, the electrical currents exclusion contains exceptions—that is, provides specified coverage in the event of arcing—for lightning, for fire even if there were no lightning, for power interruption, and for computers. None of those exceptions apply to damage to equipment as a result of arcing. The City's loss was damage to equipment as a result of arcing. But for arcing there would be no loss or damage to equipment. Whether there is policy coverage for the sequential events which started with the squirrel is answered by the express language of the insurance policy which covers certain losses "unless the loss is *limited or caused by a peril that is excluded.*" The policy says EMC will not "pay for loss or damages that is *caused by or results from*" arcing, but then makes several exceptions for which it will pay for damage caused by arcing.

After applying meaning to the operative words of the insurance policy and reviewing the contract as a whole, we find no ambiguity. The express terms of the arcing exclusion limit an expansion of causation as the City has requested. We need not examine the contours of efficient proximate cause because the

plain language of the contract is not ambiguous, and it plainly excludes coverage for a prior event—the squirrel completing the electrical circuit—no matter how close in time, which led to arcing (except if it were caused by lightning). The policy excludes losses for damages which are "caused by or results from" arcing. "Results from" invokes but-for causation. But for arcing there would have been no loss.

## V.    Conclusion

Because the damages claimed by the City were excluded under the insurance policy, EMC was entitled to summary judgment as a matter of law.

**AFFIRMED.**

Danilson, C.J., concurs; Doyle, J., dissents.

**DOYLE, Judge** (dissenting).

I respectfully dissent.

As noted in the majority opinion, the City contends the fortuitous event—the squirrel coming into contact simultaneously with the energized cable and grounded frame—which immediately set in motion the arcing event that caused the City's property damage, was the efficient proximate cause of the City's loss and therefore covered under the policy. EMC argues the efficient-proximate-cause rule does not come into play, contending only one peril—arcing—caused damage to the City's property and therefore the loss is excluded from coverage by the policy's electrical currents exclusion. Even if the efficient-proximate-cause rule does apply, EMC argues the arcing must be deemed the dominant cause of the loss and, therefore, the loss is excluded from coverage.

> The efficient-proximate-cause rule
>
> permits recovery under the insurance policy for a loss caused by a combination of a covered risk and an excluded risk only if the covered risk was the efficient proximate cause of the loss. The efficient proximate cause of the loss is the one that sets the other causes in motion that, in an unbroken sequence, produced the result for which recovery is sought.

7 Steven Plitt et al., *Couch on Insurance* § 101.55 (3d ed. Supp. Dec. 2017) [hereinafter *Couch on Insurance*]. For the reasons that follow, I believe the efficient-proximate-cause approach is applicable here. Furthermore, the policy does not contract out of the efficient-proximate-cause doctrine—at least as it pertains to the electrical currents exclusion. Consequently, the City's loss is not excluded under the policy. Therefore, I conclude EMC was not entitled to summary judgment, and I would reverse and remand for further proceedings.

The EMC policy specifically and clearly states that EMC will not pay for a loss caused by or resulting from arcing. Seems simple enough. But, like most legal matters, it is not. The court-created efficient-proximate-cause doctrine muddies the waters. The doctrine's odd terminology and unpredictable application to various factual situations has left many lawyers—and judges—scratching their heads. The doctrine adds a virtually impenetrable layer of complexity and confusion to this matter. "It's just simply complicated."[4]

As I begin this journey into that oh-so electrifying field of property insurance law, I note the familiar "concept of 'proximate cause' has a different meaning and applications in the area of insurance law than it has in tort law." *Couch on Insurance* § 101.40. While tort law applies the concept to determine the existence of liability for damages claimed in a lawsuit,

> proximate cause as applied in insurance law bears no relationship with the determination of 'culpability' or the explanation for why the injury took place. Instead, insurance law employs the concept of proximate cause for the purposes of determining whether the specific type of injury caused by the specific type of physical act or event was intended to be covered under the terms of the subject policy.

*Id.* "The concept of proximate cause when applied to insurance policies is a limited one; among the factors which must be assessed are the spatial and temporal proximity between the insured peril and the claimed loss." 10A *Couch on Insurance* § 148.57.

Additionally, I find apt the observation that "[c]ausation has always been a troublesome concept for lawyers." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 244 (Iowa 2015) (Hecht, J., dissenting) (quoting

---

[4] Jimmy Buffett, *Simply Complicated*, License To Chill (Mailboat Records, RCA 2004).

Banks McDowell, *Causation in Contracts and Insurance*, 20 Conn. L. Rev. 569, 569 (1988)). Particularly troublesome are instances of multiple causes—where two or more occurrences lead to a loss and at least one is covered by the policy and another is not covered or excluded. *See id*. Complexity arises when the loss arguably is "attributable to independent, concurrent causes, one of which is covered, the other of which is excluded." 10A *Couch on Insurance* § 148.57 (Observation). In these situations, courts have applied three analytical approaches: "liberal," "efficient proximate cause," and "conservative." *Amish Connection*, 861 N.W.2d at 244-45 (Hecht, J., dissenting). Justice Hecht notes Iowa appellate courts "have not consistently applied any of these tests" but "have followed principles from both the liberal approach and the efficient proximate cause approach." *Id*. at 245.[5]

Furthermore, "as with art, causation in the property insurance context often seems to derive from the eye of the beholder." *Appleman* § 44.01[1]. The following chronological review of what I believe to be relevant Iowa appellate cases bears this out.

In *Vorse v. Jersey Plate Glass Insurance Co.*, 93 N.W. 569, 569 (Iowa 1903), the insured purchased a policy of insurance insuring against loss or damage by breakage of plate glass in a building owned by the insured. The insured plate glass was broken in an explosion caused by gasoline vapors ignited by a match. *Vorse*, 93 N.W. at 569. The policy contained a fire

---

[5] Citing *Qualls v. Farm Bureau Mut. Ins. Co.*, 184 N.W.2d 710 (Iowa 1971) and *Jordan v. Iowa Mut. Tornado Ins. Co. of Des Moines*, 130 N.W. 177 (Iowa 1911), an insurance law treatise states Iowa, like a majority of states, applies the "efficient proximate cause" rule. 5 Jefferey E. Thomas & Susan Lyons, *New Appleman on Insurance Law Library Edition* § 44.04[5] (Sept. 2017 update) [hereinafter *Appleman*].

exclusion. *Id.* The insurance carrier argued the loss was not covered because "the damage to the glass happened by, or was in consequence of, fire." *Id.* at 570. Or, as the court characterized the argument, "that the explosion was due to, or in consequence of, fire, if not fire itself." *Id.* The Iowa Supreme Court viewed the loss as not happening by, or in consequence of, "any fire, as those terms are used in the policy in suit." *Id.* The court concluded that, "in ordinary parlance, the damage was due to the explosion, or to the concussion produced thereby." *Id.*

> The lighted match, or other light in the building, was not contemplated by the parties as the fire which was excepted by the terms of the policy. It was not a destructive fire, against the immediate effects of which the condition in the policy was intended as a protection. It was, it is true, the possible means of putting the destructive force in motion, but was not the excepted peril. Had there been no fire after the explosion, it seems to us it could not fairly be claimed that the damage done the glass was due to, or in consequence of, any fire. The immediate cause of the breakage was concussion produced by the ignition of gas, it is true; but that such an effect was due to or in consequence of fire, as that term is ordinarily used, or as the parties intended it in this case, is hardly supposable. . . . "Where, however, the explosion is caused by fire, the damage must be traceable directly to the fire, as the proximate cause, and not merely as the result of the explosion. The fire must be shown to be the causa proxima, and not the causa remota. If the injury is entirely due to concussion, the fact that it was caused by fire does not make the fire the proximate cause, but the cause of the cause, and consequently the causa remota, instead of the causa proxima."

*Id.* The court concluded the insured had a right to recover since "the damage did not happen by, nor in consequence of, any fire." *Id.*

*Delaney v. Modern Acc. Club*, 97 N.W. 91, 93 (Iowa 1903), involved an accidental death policy. Delaney, the insured, received a slight cut on his finger during a friendly scuffle. *Delaney*, 97 N.W. at 93. An inflammation followed

which developed into erysipelas and blood poisoning, causing Delaney's death.

*Id.* In order to be covered by the insurance contract, Delaney's death must have resulted solely from accidental injuries. *Id.* The question argued in the case was "whether the death was solely due to the cut on the finger, or whether it was due to erysipelas and the consequent blood poisoning, as an independent cause." *Id.* There was a contention the bacilli causing the blood poisoning was introduced into the blood of Delaney's hand through the cut, but sometime after he was cut. *Id.* In considering the issue, the court stated,

> It seems to us, however, that it is wholly immaterial when or how the specific bacilli which caused the disease known as "blood poisoning," which resulted in the death of Delaney, were introduced into the wound, whether at the time it was inflicted or subsequently. Blood poisoning is a disease, just as many other pathological conditions of the human system, resulting from the introduction therein of other specific bacilli, are diseases. It occurs to us that it is, indeed, wholly immaterial whether the pathological condition which results in death is due to bacilli or not. The simple question is whether the death of Delaney resulted, through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous. Even though the wound results in disease and death through the negligence of the injured person in failing to take ordinary and reasonable precautions to avoid the possible consequences, the death is the result of the wound.

*Id.* In citing a few pertinent cases, the court quoted one case that articulated the efficient-proximate-cause doctrine:

> The principal question in the case is, what kind of cause is to be deemed 'proximate,' within the meaning of the policy? Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause; and, in dealing with such cases, the maxim, 'Causa proxima

non remota spectatur,' is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause. It means that the law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause of causes, beyond seeking the efficient, predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect.

*Id.* at 94 (quoting *Freeman v. Mercantile Mut. Acc. Ass'n.*, 30 N.E. 1013, 1014 (Mass. 1892). The court found the cases it cited

support, therefore, the general proposition that death resulting from disease, which follows as a natural consequence, though not the necessary consequence, of a physical injury, which is accidental, is an accidental death, within the terms of an accident insurance policy; the death being deemed the proximate result of the injury, and not of disease, as an independent cause.

*Id.* at 95. The court concluded Delaney's "disease was not concurrent with the injury, but was a natural consequence of it, and the death resulting therefrom was therefore solely due to the injury, and not due to any independent cause," and his death was accidental and therefore covered by the insurance policy. *Id.* at 95-96.

In *Jordan v. Iowa Mutual Tornado Insurance Co. of Des Moines*, 130 N.W. 177, 177 (Iowa 1911), an insurance carrier issued policies of insurance on livestock against loss or damage by tornadoes, cyclones, or windstorms. Each policy included an exception "for damage to live stock by the blowing or topping over of hay or straw stacks, or by snow or hail." *Jordan*, 130 N.W. at 177. Jordan claimed he suffered a loss of livestock by reason of a winter windstorm. *Id.* The insurance carrier denied the claim contending the livestock died of

causes not covered in the policies. *Id.* Testimony indicated there was blowing snow during the windstorm. *Id.* at 178-80. The trial court concluded "the primary cause of the loss was the windstorm." *Id.* at 177. The court also concluded the insurance carrier failed to show that an exception applied. *Id.* at 178. The supreme court agreed. *Id.* at 181.

> Again it is contended [by the insurance carrier] that the storm was not the proximate cause of the loss or damage; that the injury to the cattle was due directly, if not solely, to the conditions of the temperature. It is a question of fact to be determined from the testimony and without setting it out it is sufficient to say that the trial court was justified in finding loss would not have happened but for the windstorm, and that this windstorm was the efficient cause of the damage. That other irresponsible causes may also have contributed to the loss does not, of itself, relieve the defendant from responsibility.
>
> The burden under the issues joined was upon defendant to show that the loss or damage was due to snow or hail . . . . This it failed to do, and as the trial court was justified in finding that the storm was an efficient and proximate cause of the damage there is nothing in defendant's present contention.

*Id.* (internal citations omitted). The court affirmed the trial court's judgment. *Id.*

*Ballagh v. Interstate Business Men's Acc. Association*, 155 N.W. 241, 241 (Iowa 1915), is another blood poisoning case concerning an accidental death policy. Ballagh suffered an accidental abrasion that became infected, which produced blood poisoning, ending in death. *Ballagh*, 155 N.W. at 241. The insurance carrier asserted the blood poisoning was an intervening cause so the death could not be deemed accidental. *Id.* at 242. The supreme court cited its *Delaney* decision and its decisions that followed it. *Id.* at 243. As a defense to the claim for benefits, the insurance carrier relied on a clause in the policy that excepted deaths resulting from infection, the argument being,

that the deceased did not die from the accidental injury received, but from the blood poisoning which followed the injury; that blood poisoning is infection or the result of infection, and the case is therefore within the plain meaning of the exception.

*Id.* at 244. The court responded,

This brings us once again to the same question which is considered in the first paragraph of this opinion, and that is whether, conceding that the injury to the deceased was in its origin comparatively slight, and not necessarily fatal, and that blood poisoning through the wound either accompanied the injury or followed it as a natural consequence thereof, and that blood poisoning is infection within the proper significance of that word, and that this series of events led in natural order to the death, it follows that the proximate cause of such death was the infection or blood poisoning, or was the original injury. We have already expressed our agreement with the precedents which hold that in such cases the original injury is the sole proximate cause, and that the death in such case is not a "death resulting from infection," within the meaning of the contract.

*Id.* at 244-45. The court went on to reference additional authority concerning the meaning of proximate cause:

The "proximate cause" is the dominant cause, not the one which is incidental to that cause, its mere instrument. . . . The inquiry must always be whether there was any intermediate cause disconnected from the primary fault and self-operating which produced the injury.

*Id.* at 245 (quoting *Aetna Ins. Co. v. Boon*, 95 U.S. 117, 133 (1877)).

In *Chase Investment Co. v. Mid-Western Casualty Co.*, 4 N.W.2d 863, 864 (Iowa 1942), a truck was damaged in a collision. The temperature at the time was below zero, and before the truck could be towed to a garage, the engine block and head were damaged by freezing of the water therein, and several articles were stolen from the truck. *Chase*, 4 N.W.2d at 864. The driver was injured in the collision and had been taken to a hospital. *Id.* The insured's claim for the further loss was denied by the insurance carrier. *Id.* It asserted the insured failed to protect the property from further loss or damage. *Id.* The policy

excluded from coverage any "further loss or damage due directly or indirectly to the insured's failure to protect." *Id.* The insurance carrier argued it was not liable "unless the damage to the motor and the loss by theft was proximately caused by the collision without intervention of a new and independent agency." *Id.* It asserted there was no direct connection between the collision and the independent agencies of freezing and theft added to the loss. *Id.* The supreme court disagreed that the freezing of water in the motor and the theft were, under the record, the sole, independent, proximate cause of the further loss and damage. *Id.* at 865. The court noted that the driver had been taken to the hospital after the collision and was told by members of the patrol that they would take care of the truck. *Id.* The owner of the truck retrieved the truck the next day. *Id.* The additional damage to the truck occurred during this time, and while the driver was in the hospital. *Id.* The court concluded it was a fact question as to whether the driver exercised due care in protecting the truck from further loss. *Id.* The court said if the driver had deliberately abandoned the truck, or in the exercise of reasonable care could have avoided the further damage, "the collision would not be an efficient proximate cause of the damage." *Id.* On the other hand, if the driver exercised due care in protecting the truck after the collision, "the collision would be the efficient proximate cause of the further damage." *Id.*

In *Qualls v. Farm Bureau Mutual Insurance Co.*, 184 N.W.2d 710, 712 (Iowa 1971), an insured sought coverage for the loss of his livestock under his insurance policy's extended coverage for "loss of livestock by 'attack by dogs or wild animals.'" The insurer argued that although it was likely Qualls's livestock

was bitten by wild animals, it was the infection from the bites that killed the livestock, *not* the bites themselves, so the loss was not covered. *Qualls*, 184 N.W.2d at 712. The trial court agreed, but the Iowa Supreme Court reversed the ruling. *Id.* The supreme court reasoned that the peril insured against was "attacks by dogs or wild animals," and the loss of the livestock was the proximate result of the wild animals' attack, explaining:

> In insurance law it is generally understood that where the peril insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss.

*Id.* at 712-13. Because the cows' deaths were determined "to be the result of an infection incurred by a bite or attack by a wild animal" based upon expert testimony, the court found the loss was one contemplated by the insurance policy. *Id.* at 713.

In *Bettis v. Wayne County Mutual Insurance Ass'n*, 447 N.W.2d 569, 569-70 (Iowa Ct. App. 1989), an insured sought recovery for damages caused to his tractor's transmission resulting from towing the tractor from a collision scene. Bettis's insurance carrier denied the claim "due to policy language limiting coverage to 'direct loss resulting from overturn or collision.'" *Bettis*, 447 N.W.2d at 570. The insurance carrier argued the transmission damage was not a direct result of the collision. *Id.* This court disagreed. *Id.* at 571. We noted that, "In an insurance policy, direct cause means immediate cause or proximate cause, as distinguished from remote cause." *Id.* (citation omitted). Citing *Qualls*, we said, "In insurance law, an insured event is considered the proximate cause of a loss if the event sets in motion other causes which, through an unbroken sequence and

connection, results in the loss." *Id.* Recognizing the dominant cause may be concurrent or remote in point of time or place, we concluded "we look not necessarily to the last act in the chain of events, but rather to the predominant cause which set in motion the chain of events causing the loss." *Id.* (citations omitted). Applying these principles, we concluded:

> The loss in this case, the transmission damage, was the result of a chain of events set in motion by the collision, an insured event. While the [insurance carrier] urges us to look at the towing as the efficient physical cause of the loss, we find the collision in the ditch was the dominant cause of the transmission damage. Therefore, the transmission damage is covered by [Bettis]'s collision insurance.
> The parties to the insurance contract here could have reasonably foreseen that a collision would result in the need for towing, and damage to the vehicle might result while it was being towed. Such a contingency should therefore be deemed an element of the risk insured against.

*Id.* (citation omitted).

*Kalell v. Mutual. Fire and Automobile Insurance Co.*, 471 N.W.2d 865, 866 (Iowa 1991), involved the removal of a dead tree limb from a tree by attaching it to a rope and pulling it with a pickup truck. A piece of the limb struck and injured Kalell. *Kalell*, 471 N.W.2d at 866. Defendants' homeowners insurance carrier intervened in the ensuing lawsuit requesting a ruling that its policy did not provide coverage for the incident based on the policy's exclusion for "occurrences 'arising out of the use' of a motor vehicle." *Id.* In applying the appropriate canons of construction of insurance policies, the supreme court court held that,

> when two independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowners policy unless the vehicle-related negligence is the sole proximate cause of the injury. Under Iowa law, of course, more than one proximate cause may exist. Liability which results

from nonvehicular negligence is not excluded by the homeowners policy.

*Id.* at 868 (citations omitted). The court concluded that whether Kalell's injuries came solely by negligent use of the vehicle was for a trier of fact to decide. *Id.* at 869.

In *Clasing v. State Farm and Cas. Co.*, No. 08-1237, 2009 WL 1492044, at *1 (Iowa Ct. App. May 29, 2009), the insureds sought recovery for the loss of their hogs. The Clasings operated a hog confinement facility. *Clasing*, 2009 WL 1492044, at *1. An ice storm caused a power outage. *Id.*

> In three of the four barns, ceramic curtains dropped when the electricity failed, allowing the swine barns to ventilate despite the loss of power. In the fourth barn, ice prevented the curtain from dropping to allow ventilation. The temperature in the unventilated barn rose quickly. 659 of the 1900 hogs in that barn died.

*Id.* The Clasings filed a claim for the loss and State Farm denied the claim based upon its policy's "suffocation" exclusion. *Id.* The Clasings sued State Farm alleging breach of contract and bad faith, claiming the hogs did not suffocate, "but rather died 'because inadequate ventilation into the building occurred due to an insured occurrence.'" *Id.* The district court granted State Farm's motion for summary judgment, concluding that although the legal cause of the death of the hogs was an accumulation of ice, the hogs' deaths were directly and immediately caused by suffocation, and therefore the loss was excluded by the plain language of the policy.[6] *Id.* at *2. On appeal, a panel of this court reviewed the

---

[6] The policy provides, in relevant part:

> 1. We do not insure for any loss to the property described in Coverages D, E, or F which consists of, or is *directly and immediately caused* by, one or more of the perils listed in items a. through u. below, *regardless of whether the loss occurs suddenly or gradually, involves*

issue of proximate cause in insurance cases, citing to *Qualls* and *Bettis*, noting that

> "direct cause means immediate cause or proximate cause, as distinguished from remote cause." "Direct" as used in an insurance policy relates to causal connection and is to be interpreted as the immediate or proximate cause as distinguished from the remote cause.

*Id.* And it was noted that "[t]he question of proximate cause is ordinarily for the jury—only in exceptional cases should it be decided as a matter of law." *Id.* at *3. The panel agreed

> with the district court's conclusion the loss of the hogs is covered under the insuring clause of the contract unless excluded. The question remains whether the court properly determined there was no genuine issue of material fact as to the applicability of the exclusion for suffocation.

*Id.* The panel concluded the district court erred in determining there was not a genuine issue of material fact because, although there was evidence from which a fact finder could find the hogs died of suffocation, there was also evidence the fact finder could find some or all the hogs died of hyperthermia or some other cause. *Id.* The panel summed up:

> As the issue of whether the death of the hogs was caused by an excluded cause is critical to determining whether there is coverage for the loss, and we have determined the court erred in concluding there was no genuine dispute that the hogs died of suffocation, we must also conclude State Farm was not entitled to judgment as a matter of law.

*Id.* at *4.

---

> *isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:*
> . . . .
> t. loss to livestock or poultry does not include loss caused by: (1) suffocation;

*Clasing*, 2009 WL 1492044, at *4 n.3.

Lastly, in *Amish Connection*, the issue was "whether a business insurance policy covered water damage inside a building resulting when a corroded interior drainpipe burst during a summer rainstorm." 861 N.W.2d at 232. The policy was an all risk policy insuring for accidental direct physical loss to covered property unless the loss was subject to a limitations section or was excluded. *Id.* The policy included a rain limitation. *Id.* The policy's "Losses Not Insured" included a "Rust-and Corrosion" exclusion and that exclusion included a "Water system" exception for "water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." *Id.* at 234. State Farm claimed coverage was excluded under the rain limitation. *Id.* Amish Connection claimed the loss was covered under exception for breaking pipes. *Id.* Applying the principles of construction and interpretation for insurance contracts, the supreme court concluded the damage was caused by rain and that the rain limitation unambiguously defeated coverage for the rainwater damage. *Id.* at 236-37. Because the court found the rain limitation to be dispositive, it rejected Amish Connection's argument the "Water System" exception to the "Rust-and Corrosion" exclusion applied. *Id.* at 239. The court reasoned that "an exception to an exclusion cannot create coverage where none exists." *Id.* (citation omitted). Furthermore, the court the court held the "Water System" exception did not provide coverage "because State Farm's policy effectively [had] an anticoncurrent provision." *Id.* at 240. "This means the rain limitation controls regardless of whether the breaking drainpipe is considered a concurrent cause of the rainwater damage." *Id.* The court held that

under the unambiguous terms of State Farm's policy, damage from rainwater released by a breaking drainpipe during a rainstorm is not an insured loss because the damage [was] caused by rain within the meaning of the rain limitation, even though the breaking drainpipe is a concurrent cause.

*Id.* 243.

In the context of this appeal, none of the preceding cases are on point. All are distinguishable in some way. And, like the majority, I was unable to find an on-point case from any jurisdiction. With that backdrop in mind, and with no definite schematic to follow, I forge ahead.

The squirrel set in motion, albeit instantaneously, another cause—arcing, which in an unbroken sequence, produced the result for which the City seeks recovery. But for the squirrel's action, there would have been no arcing. The Supreme Court of Washington summarized best the concept of efficient proximate cause in chain of causation cases:

> The efficient proximate cause rule states that where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage. 'Stated in another fashion, where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery.'
> . . . .
> By its own terms, the efficient proximate cause rule operates when an "insured risk" or covered peril sets into motion a chain of causation which leads to an uncovered loss. If the efficient proximate cause of the final loss is a covered peril, then the loss is covered under the policy. In chain of causation cases, the efficient proximate cause rule is properly applied after (1) a determination of which single act or event is the efficient proximate cause of the loss and (2) a determination that the efficient proximate cause of the loss is a covered peril.

*McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1004 (Wash. 1992) (internal citations omitted). In a similar vein, our supreme court has said,

> In insurance law it is generally understood that where the peril insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss.

*Qualls*, 184 N.W.2d at 713. This court has similarly stated, "[W]e look not necessarily to the last act in the chain of events, but rather to the predominant cause which set in motion the chain of events causing the loss." *Bettis*, 447 N.W.2d at 571. Even though the squirrel itself caused no damage, its act of completing the electrical circuit is the efficient proximate cause of the City's loss because it set in motion the arcing event.

Furthermore, I find *Continential Insurance Co. v. Arkwright Mutual Insurance Co.*, 102 F.3d 30 (1st Cir. 1996), illuminating. In that case, flood waters entered the basement of a New York City office building resulting in more than one million dollars in property damage. *Arkwright*, 102 F.3d at 31.

> Slightly more than half the damage involved energized electrical switching panels which had come into contact with the flood waters. The water immediately caused a phenomenon known as "electrical arcing"—an electrical short circuit in lay terms—which in turn caused an immediate explosion that blew large holes in the switching panels.[7]

*Id.* (footnote omitted). Three separate insurance policies provided coverage for the building, including two identical "all-risk" policies. *Id.* Each "all-risk" policy excluded coverage for mechanical or electrical breakdown caused by artificially generated electrical currents. *Id.* at 31-32. The insurance carriers got into a

---

[7] There is no allegation in *Arkwright* that the flood water caused any physical damage to the electrical switching panels.

legal kerfuffle, the details of which are omitted in the interests of brevity. *Id.* The central issue was whether the damage to the electrical equipment was caused by flooding, a covered peril, or by arcing, an excluded peril. *Id.* at 32. The appellate court engaged in an analysis of New York law to determine the proximate or legal cause of the damage to the electrical equipment. *Id.* at 35-38. In the context of an insurance contract, the court's inquiry could "not proceed beyond the dominant, efficient, physical cause of the loss." *Id.* at 35 (citing *Home Ins. Co. v. American Ins. Co.*, 537 N.Y.S.2d 516, 517 (1989)). Among the factors the court assessed was the spatial and temporal proximity between the insured peril and the claimed loss. *Id.* at 36. The court noted,

> Our case involves no spatial or temporal attenuation at all comparable to that present in *Bird* [*v. St. Paul Fire & Marine Ins. Co.*, 120 N.E. 86 (N.Y. 1918)]. The flood waters came *directly* in contact with the electrical equipment in the Water Street Building, *instantaneously* precipitating the arcing which in turn caused the *immediate* short-circuiting and explosion that damaged the switching panels. At most, mere seconds would have elapsed from the time the flood waters directly contacted the electrical equipment until the electrical switching panels exploded.

*Id.* (emphasis in original). The court concluded, "given the absence of any significant spatial separation or temporal remoteness between the insurgent flood waters, the electrical arcing and the explosion of the switching panels, . . . the district court correctly concluded that flooding proximately caused the loss." *Id.* Under the circumstances presented—"where flood waters flowed directly onto electrical equipment, immediately precipitating in turn the instantaneous electrical arcing, the short-circuiting, and the explosion which damaged the switching panels"—the court concluded "the insurgent flood waters cannot reasonably be thought simply to have 'set the stage' for a remote event, or to have been merely

some metaphysical beginning to a succession of temporally remote events." *Id.* at 37. The *Arkwright* court held that "a reasonable business person would consider that the damage sustained by the electrical switching panels in the Water Street Building, just as any other water damage to the building, was caused by flood." *Id.* Additionally, the court acknowledged that "the determination as to which of two causes was the dominant and efficient cause of a loss is for the factfinder" but concluded determination by summary judgment was appropriate because there was no factual question as to which of two perils physically caused the loss; rather, there was "*no dispute* concerning the physical, as distinguished from the legal, cause of the damage—i.e., what physical phenomenon precipitated the alteration to the electrical switching panels." *Id.* at 37-38 (emphasis in original). The court affirmed the district court's summary judgment ruling that held the flood was the legal cause of the loss. *Id.* at 38. The controlling New York law cited in *Arkwright* does not appear to be in conflict with Iowa precedent. Applying *Arkwright* here, given the absence of any significant spatial separation or temporal remoteness between the squirrel's actions, the electrical arcing, and damage to the electrical equipment, I believe that the squirrel's actions were the legal cause of the loss. I note the district court here concluded the squirrel's presence was a legal cause of the chain of events that followed.

Whether you consider that the squirrel's actions "set in motion" the events that led to the loss or follow *Arkwright*, I conclude the squirrel's actions to be the legal and efficient cause of the City's loss, and therefore, the loss is not excluded by the policy's electrical currents exclusion.

EMC argues the lightning exception to the electrical currents exclusion "effectively creates an anti-concurrent causation provision."[8]  An anticoncurrent causation (ACC) clause "in an insurance policy states that where a property loss is caused by a combination of excluded and covered perils, the entire loss is excluded from coverage.  An ACC clause is designed to contract out of the doctrines of 'concurrent cause' and 'efficient proximate cause.'"  Dale Joseph Gilsinger, *Validity, Construction, and Application of Anticoncurrent Causation (ACC) Clauses in Insurance Policies*, 37 A.L.R. 6th 657 (2008) [hereinafter Gilsinger].  Parties are free to so contract.  *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 506 (Iowa 2013) ("[W]e allow insurers to limit coverage to only specific claims."); *see also Kalell*, 471 N.W.2d at 868 ("If [the insurer] intended to exclude coverage of an incident simply because it involved a motor vehicle, it is incumbent on it to say so in its policy.").  So, if an ACC clause is incorporated into the EMC insurance policy, the electrical currents arcing exclusion would apply regardless of whether the squirrel's actions are considered the efficient proximate cause of the damage to the City's electrical equipment. *See Amish Connection*, 861 N.W.2d at 240.

The introductory sentence preceeding a number of exclusions the policy's exclusions, including the electrical currents exclusion, states: "'We' do not pay for loss or damage that is caused by or results from one or more of the following excluded causes or events . . . ."  As noted by Justice Hecht, ACC clauses typically include the word "concurrent."  *Id.* at 249.

---

[8] The electrical currents exclusion provides, in part: "'We' do not pay for loss caused by arcing or by electrical currents other than lightning."

There are "short form" and "long form" ACC clauses. *See* Gilsinger § 3. The "short form" consists of the following language or its substantial equivalent: "We do not cover loss to any property resulting directly or indirectly from any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.*; *see also TNT Speed & Sport Ctr. v. Am. States Ins. Co.*, 114 F.3d 731, 732 (8th Cir. 1997) (substantially same clause); *Am. Fam. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 114-15 (Iowa 2005) (enforcing an ACC clause providing "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."); *Salem United Methodist Church v. Church Mut. Ins. Co.*, No, 13-2086, 2015 WL 1546431, at *2 (Iowa Ct. App. Apr. 8, 2015) ("We will not pay for loss or damage caused directly or indirectly by any of the following. *Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*"). The "long form" consists of the following language or its substantial equivalent:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.

*Gilsinger* § 3; *see also Clasing*, 2009 WL 1492044, at *2 n.3 (noting the policy stated it did not cover loss to propery that "is *directly and immediately caused* by, one or more of the perils listed . . . , *regardless of whether the loss occurs*

*suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these*").

The introductory sentence to the grouping of exclusions that includes the electrical currents exclusion does not utilize the word "concurrent." Furthermore, the use of the words "caused by or results from" does not create an ACC clause. In my view, "caused by" and "results from" are synonymous. *See State Farm Mut. Auto. Ins. Co. v. Flanary*, 879 S.W.2d 720, 723 (Mo. Ct. App. S.D. 1994) ("Clearly, 'resulting from' is more akin to 'caused by' than to 'arising out of.'"); *Sun Shipbuilding & Dry Dock Co. v. Unemp't Comp. Bd. of Review*, 52 A.2d 362, 364 (Pa. Sup. Ct. 1947) (holding that in context of an unemployment compensation statute, the phrase "due to" "is the equivalent to, or synonymous with, such accepted phrases as, 'caused by,' 'resulting from,'"), *rev'd on other grounds*, 56 A.2d 254 (Pa. 1948); *Davis v. Hix*, 84 S.E.2d 404, 420-21 (W. Va. 1954) (citing *Sun Shipbuilding*, 52 A.2d at 364). I do not believe the contains any valid ACC clause applicable to the arcing exclusion.

Furthermore, EMC demonstrated its ability to include a valid ACC clause, but it did not do so with regard to the electrical currents exclusion. Under "Perils Excluded," the first numerated introductory paragraph for the first group of exclusions states:

> 'We' do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

A number of exlcusions follow. This paragraph, containing characteristic ACC clause language, appears to be a valid ACC clause. The second numerated introductory paragraph for the second group of exclusions, which includes the electrical currents exclusion, does not incorporate the language of the first introductory paragraph.

With no valid ACC clause, the efficient proximate cause rule applies. The fortuitous event—the squirrel coming into contact simultaneously with the energized cable and grounded frame—which immediately set in motion the arcing event that caused the City's property damage, was the efficient proximate cause of the City's loss and therefore not excluded under the policy. Stated another way, the insured risk—the squirrel's action—itself set into operation a chain of causation in which the last step—the arcing—may have been an excepted risk, but under the efficient proximate cause rule, the excepted risk does not defeat recovery and the loss is covered under the policy. EMC was not entitled to summary judgment, and I would reverse and remand for further proceedings.